SANDY BEACH DEFENSE FUND, FRIENDS OF QUEEN'S BEACH, LIFE OF THE LAND, SHIRLEY M. LUM, PHILIP I. ESTERMANN, ELIZABETH G. MATTHEWS and URSULA RETHERFORD, Appellants–Appellants, v. CITY COUNCIL OF THE CITY AND COUNTY OF HONOLULU and KAISER DEVELOPMENT COMPANY, Appellees–Appellees, and KAISER HAWAII KAI DEVELOPMENT COMPANY, Intervenor–Appellee

(CIV. NO. 87–1596)

AND

SANDY BEACH DEFENSE FUND, FRIENDS OF QUEEN'S BEACH, LIFE OF THE LAND, SHIRLEY M. LUM, PHILIP I. ESTERMANN, ELIZABETH G. MATTHEWS and URSULA RETHERFORD, Plaintiffs–Appellants, v. CITY COUNCIL OF THE CITY AND COUNTY OF HONOLULU, Defendant–Appellee, and KAISER HAWAII KAI DEVELOPMENT COMPANY and KAISER DEVELOPMENT COMPANY, Intervenors–Appellees

(CIV. NO. 87–1597)

NO. 12879

APRIL 18, 1989

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

362

OPINION OF THE COURT BY LUM, C.J.

This appeal involves a challenge to the validity of the procedures employed by Appellee, the City and County of Honolulu (County) when acting upon applications for Special Management Area (SMA) use permits pursuant to the Coastal Zone Management Act (CZMA), Hawaii Revised Statutes (HRS), Chapter 205A. Appellants, residents and community groups, challenge the County's issuance of an SMA use permit to Appellee Kaiser Development Co. (Kaiser). They contend that the Honolulu City Council was required to hold a "contested case" [1] hearing pursuant to the Hawaii Administrative Procedures Act (HAPA), HRS Chapter 91, when it issued the permit, and that the Council's failure to do so violated the CZMA and deprived Appellants of their constitutional rights to due process and equal protection. The court below dismissed the case, finding no constitutional violation and ruling that the CZMA does not require a legislative body, otherwise exempt from HAPA, to conduct "contested case" hearings in issuing SMA use permits. We agree and therefore affirm the judgment of the court below.

I.

This case arises from the issuance of an SMA use permit to Kaiser by the Honolulu City Council. Kaiser sought to develop approximately 200 single–family homes in the vicinity of Sandy Beach Park on Oahu. Because a portion of the project was located within the boundaries of the "Special Management Area" (SMA) [2] established by the County pur-

---

[1] "Contested case" is defined in HRS § 91–1(5) as "a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing." HRS §§ 91–9 through 91–14 specify the procedural requirements for contested cases.

[2] "Special Management Areas" encompass critical coastal lands immediately adjacent to the shoreline requiring special management attention because of unique coastal values or characteristics. HRS §§ 205A–21, –22(4).

suant to the CZMA, Kaiser was required to obtain an SMA use permit. HRS § 205A–28.

Because this appeal involves a challenge to the procedures adopted by the County pursuant to the CZMA for administering the "Special Management Area" on Oahu, we turn first to a brief examination of the regulatory scheme before discussing the facts particular to the permit issued in this case.

## A.

The CZMA imposes special controls on the development of real property along shoreline areas in order "to preserve, protect, and where possible, to restore the natural resources of the coastal zone of Hawaii." HRS § 205A–21. Chapter 205A designates the counties as the "authority" to administer the permit system and requires the counties to adopt procedures for issuing permits. HRS §§ 205A–22(2), –29. The Honolulu City Council designated itself as the "authority" for the City and County of Honolulu unlike the other counties of Maui, Kauai, and Hawaii which delegated this function to their respective county planning commissions. *See* HRS § 205A–22(2).

The Honolulu City Council processes permit applications under procedures set forth in Revised Ordinances of Honolulu (Revised Ordinances), Chapter 33. Pursuant to this ordinance, initial processing of such applications is delegated to the Department of Land Utilization (DLU). DLU holds a public hearing on the application, and transmits its findings and recommendations to the City Council. Revised Ordinances § 33–5.3, –5.4. The Council generally refers SMA use permit applications to its Committees on Planning and Zoning which make a recommendation to the Council as a whole. The Council grants, denies, or conditions the permit by resolution. Revised Ordinances § 33–5.5.

In processing permit applications, DLU and the Council are guided by the policies, objectives, and guidelines of the CZMA.[3] HRS § 205A–26. The "authority" must make findings that the proposed

---

[3] The policies and objectives of Chapter 205A encompass seven major areas of legislative concern: (1) provision and protection of recreational resources; (2) protection and restoration of historic and cultural resources; (3) improvement of

development (a) will not have any substantial adverse environmental or ecological effects; (b) is consistent with the objectives, policies, and guidelines of Chapter 205A; and (c) is consistent with the county general plan and zoning. HRS § 205A–26(2).

### B.

In the instant case, the County accepted Kaiser's application for a permit on February 3, 1986. On April 1, 1986, DLU held a public hearing which was attended by twelve persons. Subsequently, the agency transmitted its findings and recommendation of approval to the Council, which referred the application to its Planning and Zoning Committee for consideration. During the following year, the Council as a whole or in committee publicly reviewed and discussed the application at least ten times.

In response to growing concerns over the potential impact of the proposed development, the Council held a public hearing on April 1, 1987, at which over 80 persons offered written and oral testimony both for and against the project. Those testifying expressed concerns regarding the development's impact on coastal views, preservation of open space, traffic, potential flooding, and sewage treatment. Several of the Appellants testified at the public hearings. Appellants include individuals and organizations whose members reside in the area or use the shoreline and open space resources near the proposed development.

The published notice advertising the hearing stated that speakers would be limited to a three minute presentation; however, many persons testifying, including Appellants, were allowed to speak at length. At the close of the April 1, 1987 hearing, the Council deferred action on Kaiser's application to allow consideration of the extensive testimony received and to permit the preparation of findings. Further public testimony was permitted at the City Council meeting held on April 15, 1987, at which time the Council adopted Resolution No. 87–65 granting the permit and made extensive findings of fact.

---

scenic and open space areas; (4) protection of coastal ecosystems; (5) provision for coastal–dependent economic uses; (6) reduction of coastal hazards; and (7) improvement of the process for managing development of coastal resources, including public participation. *See* HRS § 205A–2.

On May 12, 1987, Appellants filed two nearly identical lawsuits in the circuit court challenging the issuance of the permit: (1) an administrative appeal pursuant to HRS § 91–14(g) which provides for judicial review of agency decisions in "contested cases"; and (2) an action under HRS § 205A–6, which accords a person aggrieved by a county agency's failure to comply with the CZMA a right thereunder to initiate a civil action against the non–complying agency.[4] Appellants claimed in both actions that their personal, economic, and aesthetic interests would be injured and adversely affected by the project. Appellant Elizabeth Matthews, who resides in the closest proximity to the proposed development, directly across a golf course from the development, claimed the project would affect her view of the ocean and decrease the value of her property. Both suits further alleged that the failure of the City Council to hold "contested case" hearings in SMA use permit proceedings violated HRS § 205A–29, Chapter 91, and the due process and equal protection clauses of the fourteenth amendment to the United States Constitution and article I, section 5 of the Hawaii Constitution. Appellees Kaiser Development Company and Kaiser Hawaii Kai Development Company intervened as defendants and the two cases were consolidated.

On December 29, 1987, the court issued an order denying Appellants' motion for summary judgment. The court held that HRS § 205A–29(a) does not require a legislative body, otherwise exempt from HRS Chapter 91, to conduct a contested case hearing on SMA use permit applications. Appellees moved to dismiss, arguing that the sole issue in the case, whether the Council was required to hold a contested case hearing, had already been decided by the court in its order denying the motion

---

[4] HRS § 205A–6 reads in pertinent part:

(a) Subject to chapters 661 and 662, any person or agency may commence a civil action alleging that any agency:

(1) Is not in compliance with one or more of the objectives, policies, and guidelines provided or authorized by this chapter within the special management area and the waters from the shoreline to the seaward limit of the State's jurisdiction; or

(2) Has failed to perform any act or duty required to be performed under this chapter; or

(3) In exercising any duty required to be performed under this chapter, has not complied with the provisions of this chapter.

for summary judgment. The lower court granted the motion to dismiss on January 29, 1988, and this appeal followed.

## II.

We first consider Appellants' contention that the City Council, although not an "agency" within the meaning of HAPA, is required by the CZMA to conduct "contested case" hearings pursuant to HRS Chapter 91 when it acts upon SMA use permit applications. We conclude that the Council, as the legislative body of the County, is not subject to HAPA, and that the CZMA does not require the Council to conduct contested case proceedings in issuing SMA use permits.

## A.

Turning first to an examination of the Hawaii Administrative Procedures Act, we find that HRS § 91–1 specifically exempts legislative and judicial bodies from its purview. Section 91–1 defines "agency" as follows:

For the purpose of this chapter:

"Agency" means each state or county board, commission, department, or officer authorized by law to make rules or to adjudicate contested cases, *except those in the legislative or judicial branches*. (Emphasis added).

Article III of the Revised Charter of the City and County of Honolulu (Charter) vests the legislative power of the City and County of Honolulu in the City Council. *See* Charter § 3–101. Therefore, the Council clearly falls within the exception created by HRS § 91–1.

Appellants concede that HAPA does not apply to the "legislative" functions of the City Council; however, they argue that the Council acts in a "quasi-judicial" or "administrative" capacity when issuing SMA use permits, and therefore, seek to invoke HAPA's procedural requirements, specifically the provisions relating to "contested cases." HAPA mandates a trial–type hearing in contested cases before administrative agencies.[5]

---

[5] HRS §§ 91–9 *et seq.* set forth the procedures to be afforded the parties to a "contested case" including: (1) reasonable notice, (2) the opportunity to present evidence and argument, (3) an agency decision on the record, (4) rules of

It is well established that the City Council has both legislative and non–legislative powers. Section 3–201 of the Charter provides: "Every legislative act of the council shall be by ordinance. Non–legislative acts of the council may be by resolution[.]" In *Life of the Land v. City Council*, 61 Haw. 390, 423–24, 606 P.2d 866, 887 (1980), we recognized that the Council has both legislative and non–legislative powers and distinguished between them as follows:

> A legislative act predetermines what the law shall be for the regulation of future cases falling under its provisions.
>
> . . . .
>
> A non–legislative act executes or administers a law already in existence. (Citations omitted).

The issuance of an SMA use permit involves the application of general standards to specific parcels of real property. Therefore, the City Council's approval of Kaiser's SMA use permit application was a non–legislative act because it administered a law already in existence, the Coastal Zone Management Act.

We find no indication in the language of Chapter 91 that legislative bodies are excepted from the statutory definition of "agency" only when they are performing "legislative" activities, but are otherwise included in that definition. Section 91–1 clearly excludes the legislative *branch* from the definition of "agency" and therefore, from compliance with the procedural requirements contained in Chapter 91. It is well settled that

> where there is no ambiguity in the language of a statute, and the literal application of the language would not produce an absurd or unjust result, clearly inconsistent with the purposes and policies of the statute, there is no room for judicial construction and interpretation, and the statute must be given effect according to its plain and obvious meaning.

*State v. Palama*, 62 Haw. 159, 161, 612 P.2d 1168, 1170 (1980).

The legislative history of HRS § 91–1 provides further support for the exclusion of the City Council from HAPA. In adopting HRS Chapter 91, the House Judiciary Committee stated:

---

evidence, including the right of cross–examination, (5) a written decision accompanied by findings of fact and conclusions of law, and (6) prohibition against ex parte communications.

It is also the intention of your Committee that the definition of agency does not include the state legislature, *city council* and board of supervisors of the state and county government as well as the various courts including those which by statute the Supreme Court of the State of Hawaii is given rule–making authority over. (Emphasis added).

Hse. Stand. Comm. Rep. No. 8, in 1961 House Journal, at 656.

Moreover, this court has previously recognized HAPA's express exemption of the City Council. In *Kailua Community Council v. City & County*, 60 Haw. 428, 591 P.2d 602 (1979), we found that where the chief planning officer and the planning commission of the county acted in a purely advisory capacity to the Council in fulfilling its legislative function, their actions were not subject to HAPA. We noted that "[t]o hold otherwise would, by indirection, extend the application of the HAPA to the actions of the city council which by its terms the Act has excluded from its operation." *Id.* at 434, 591 P.2d at 606 (citing HRS § 91–1(1)).

We conclude, therefore, based upon the plain language of HRS § 91–1 and its legislative history, that the City Council, as the legislative branch of the County, is not subject to the procedural requirements of HAPA when acting in either a legislative or non–legislative capacity.

### B.

Appellants further contend that the CZMA overrides the exemption for legislative bodies set forth in HRS § 91–1 by requiring the county "authorities" which administer the permit process to comply with HAPA regardless of whether the "authority" is a legislative or administrative body. They claim that the CZMA incorporates Chapter 91, thus subjecting all "authorities" administering SMA use permits, including the City Council, to the requirements of HAPA. Appellants rely on several provisions of the CZMA to which we now turn.

HRS § 205A–27 designates an "authority" in each county to carry out the objectives, policies, and procedures for Special Management Areas set forth in Chapter 205A. Section 205A–22(2) defines "authority" to include both legislative *and* administrative bodies:

"Authority" means the county planning commission, except in . counties where the county planning commission is advisory only, *in which case "authority" means the county council*

or such body as the council may by ordinance designate. The authority may, as appropriate, delegate the responsibility for administering this part. (Emphasis added).

Accordingly, the Honolulu City Council designated itself as the "authority" pursuant to § 33–1.3 of the Revised Ordinances of Honolulu.[6]

The CZMA defines "agency" as follows:

"Agency" means any agency, board, commission, department, or officer of a county government or the state government, *including the authority as defined in part II*[.] (Emphasis added).

HRS § 205A–1.

Appellants argue that because the "authority" is included within the definition of "agency," the legislature intended to designate the City Council as an "agency" subject to the procedural requirements of HAPA. We disagree. Section 205A–1 defines "agency" for the purposes of Chapter 205A, not for the purposes of Chapter 91. As discussed above, Chapter 91 provides its own definition of "agency" which excludes the legislative branch.

Appellants rely primarily on HRS § 205A–29(a), arguing that this provision of the CZMA specifically requires the City Council to comply with HAPA in adopting rules and in conducting hearings. HRS § 205A–29(a) reads in pertinent part:

The authority in each county, upon consultation with the essential coordinating agency, *shall establish and may amend pursuant to Chapter 91, by rule or regulation the special management area use permit application procedures*, conditions under which hearings must be held, and the time periods within which the hearing and action for special management area use permits shall occur. The authority shall provide for adequate notice to individuals whose property rights may be adversely affected and to persons who have requested in writing to be notified of special management area use permit hearings or

---

[6] Revised Ordinances § 33–1.3 defines "Council" as "the city council of the city and county of Honolulu, which body shall act as the 'authority' under chapter 205A, Hawaii Revised Statutes."

applications. The authority shall also provide written public notice once in a newspaper of general circulation in the State at least twenty days in advance of the hearing. (Emphasis added).

Appellants contend that by employing the language "pursuant to chapter 91," the legislature contemplated that the City Council would provide "contested case" hearings as defined in Chapter 91 rather than public hearings as required by the County's current procedures. *See* Revised Ordinances § 33–5.3.

While the plain language of HRS § 205A–29(a) can be construed to require the "authority" to comply with Chapter 91 in establishing rules for administering its Shoreline Management Areas, we find that the statute does not require the City Council, otherwise exempt from HAPA, to conduct "contested case" hearings when acting upon individual permits. As we noted in *Chang v. Planning Comm'n of County of Maui*, 64 Haw. 431, 441 n.11, 643 P.2d 55, 63 n.11 (1982), "HRS § 205A–29(a) refers the county authority to chapter 91 in its promulgation of rules governing SMA use permit hearings but is otherwise silent on the manner in which the hearings must be conducted."

Furthermore, the legislative history of the original act and its amendments does not indicate any intent by the legislature to require a contested case hearing, as defined in Chapter 91, in SMA use permit procedures. On the contrary, Senate Committee Report No. 143 reflects that the legislature was concerned with providing "public" hearings:

Improved means for participation by the public in decisions affecting the coastal zone are necessary and desirable. Although public hearings afford the opportunity for public participation in certain agency decisions, many agency actions on permits affecting the coastal zone may now occur without the requirement for a public hearing. To afford the public an adequate opportunity to participate in all major decision making affecting the coastal zone during the interim until the program is implemented, provision should be made for *public hearings* on required permits where such hearings would otherwise not be required. (Emphasis added).

Sen. Stand. Comm. Rep. No. 143, in 1975 Senate Journal, at 917. Furthermore, when the CZMA was amended in 1979, the legislature stated:

Your Committees heard testimony that present procedures regarding *public hearings* in connection with SMA permit

applications are adequate. Therefore, the bill has been amended to allow the county authorities to determine the conditions under which hearings must be held, instead of requiring hearings in cases where they are requested by any person or agency. (Emphasis added).

Hse. Stand. Comm. Rep. No. 629, in 1979 House Journal, at 1442.

The pattern and purpose of the CZMA lead to the conclusion that the legislature intended the hearing held by the county authority in conjunction with the application for an SMA use permit be informational in nature in order to permit members of the public to present their views and relevant data as an aid to the administrative decision on the particular application as well as long–term planning policy for the entire coastal area.

We find, therefore, that neither the language nor the legislative history of the CZMA supports Appellants' contention that the City Council is required to conduct contested case hearings in SMA use permit proceedings. Rather, it is apparent that the legislature in HRS § 205A–29 allowed each authority to decide for itself the nature of the hearings it would conduct in reviewing SMA use permit applications.

In support of their argument that SMA use permit proceedings are "contested cases" within the meaning of Chapter 91, Appellants rely on decisions of this court in which we recognized that the hearings held by the planning commissions of the counties of Maui and Kauai in issuing SMA use permits were "contested cases." *Chang v. Planning Comm'n*, 64 Haw. 431, 436, 643 P.2d 55, 60 (1982); *Mahuiki v. Planning Comm'n*, 65 Haw. 506, 513, 654 P.2d 874, 879 (1982).

As noted previously, while the City Council of the City and County of Honolulu appointed itself the "authority" to administer the Shoreline Management Area, the counties of Maui, Kauai, and Hawaii have delegated this function to their respective planning commissions. *See* HRS § 205A–22(2). County planning commissions are clearly "agencies" as defined by HAPA. *See* HRS § 91–1(l). Therefore, the permit application proceedings we considered in *Chang* and *Mahuiki* fell within the definition of "contested case" as "a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for *agency hearing*." HRS § 91–1(5); *Mahuiki*, 65 Haw. at 513, 654 P.2d at 879 (emphasis added). These decisions, therefore, are

not dispositive of the question in this case, whether a legislative body is subject to the contested case procedures of HAPA.

## C.

While we find that HRS § 205A–29 does not subject the City Council to Chapter 91 contested case procedures when acting upon SMA use permits, we recognize that § 205A–29(a) can be interpreted to require the Council's adherence to Chapter 91 in establishing a regulatory scheme for administering SMA use permit application procedures. Specifically, the first sentence of § 205A–29(a) provides that:

> The authority in each county, upon consultation with the central coordinating agency, *shall establish and may amend pursuant to chapter 91*, by rule or regulation the special management area use permit application procedures, conditions under which hearings must be held, and the time periods within which the hearing and action for special management area use permit shall occur. (Emphasis added).

Thus, while the City Council is not an "agency" as defined by Chapter 91, § 205A–29(a) nevertheless appears to require the "authority" to comply with the rule–making provisions of Chapter 91 in adopting its SMA use permit application procedures. We therefore turn to an examination of the manner in which the County adopted its procedural scheme for issuing SMA use permits.

In 1984, the City Council adopted Ordinance No. 84–4, subsequently codified as Revised Ordinances of Honolulu Chapter 33, setting forth a regulatory scheme for processing SMA use permit applications.[7] Because the promulgation of rules governing SMA procedures was a legislative act, the Council was required by the Revised

---

[7] The CZMA was enacted by the legislature in 1977, and replaced the Shoreline Protection Act of 1975, an interim act. Prior to 1984, the County apparently processed SMA use permits under Ordinance No. 4529 which was repealed by Ordinance 84–4. For the purposes of this case, Ordinance 84–4 is the operative law.

Charter of the City & County of Honolulu (Charter) to adopt an ordinance.[8]

The procedure for the adoption of rules by agencies is set forth in HRS § 91–3(a):

Prior to the adoption of any rule authorized by law, or the amendment or repeal thereof, the adopting agency shall:

(1) Give at least 20 days' notice for a public hearing. Such notice shall include a statement of the substance of the proposed rule, and of the date, time and place where interested persons may be heard thereon. The notice shall be mailed to all persons who have made a timely written request of the agency for advance notice of its rulemaking proceedings, and published at least once in a newspaper of general circulation in the State for state agencies and in the county for county agencies.

(2) Afford all interested persons opportunity to submit data, views, or arguments, orally or in writing. The agency shall fully consider all written and oral submissions respecting the proposed rule. The agency may make its decision at the public hearing or announce then the date as to when it intends to make its decision. Upon adoption, amendment, or repeal of a rule, the agency shall, if requested to do so by an interested person, issue a concise statement of the principal reasons for and against its determination.

HRS § 91–3(c) provides that in the case of county agencies, the rule shall be subject to the approval of the mayor.

The record indicates that the City Council conducted a public hearing on January 17, 1984, prior to adoption of Ordinance No. 84–4. Notice was published on December 27, 1983 and January 6, 1984, specifying the

---

[8] The City Council does not "make rules"; rather, it "adopts ordinances." The Charter provides that "[e]very legislative act of the council shall be by ordinance." Charter § 3–201.

date, time and place of the hearing. The notice explained in some detail the contents of the proposed ordinance. It provided that persons wishing to speak at the hearing should sign up at the City Clerk's Office, that their presentations would be limited to three minutes, and requested them to submit fifteen copies of their statement. The notice further provided for the filing of written statements with the City Clerk up to the day before the subject matter was discussed in committee. The ordinance was adopted by the Council on February 10, 1984, and was subsequently signed by the mayor.

We conclude, based upon the facts outlined above, that the procedure followed by the Council in adopting Ordinance 84–4 was in accordance with the rule–making provisions of Chapter 91. Consequently, the County complied with HRS § 205A–29(a) in establishing "pursuant to Chapter 91" its SMA use permit application procedures.

III.

We next consider Appellants' contention that the procedures employed by the City Council in issuing the SMA use permit to Kaiser violated their constitutional right to procedural due process under the fourteenth amendment to the United States Constitution and article I, section 5 of the Hawaii Constitution. Appellants claim that, even if the City Council was not subject to the requirements of HAPA, the Council nevertheless had a constitutional responsibility to afford them a trial–type adjudicatory hearing because they possess constitutionally protected "property" interests. Therefore, Appellants argue, they were entitled to the full panoply of contested case procedures including cross–examination of witnesses, findings of fact and conclusions of law limited to the evidence, and prohibition on ex parte communications by decisionmakers. We disagree that a trial–type adjudicatory hearing was mandated by the constitution in this case and conclude that the hearings provided Appellants were consistent with the requirements of procedural due process.

In *Aguiar v. Hawaii Hous. Auth.*, 55 Haw. 478, 495, 522 P.2d 1255, 1266 (1974), we set forth a two–step analysis for claims of a due process right to a hearing: (1) is the particular interest which claimant seeks to protect by a hearing "property" within the meaning of the due process clauses of the federal and state constitutions, and (2) if the interest is "property," what specific procedures are required to protect it. Therefore,

in order to assert a right to procedural due process, Appellants must possess an interest which qualifies as "property" within the meaning of the constitution.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548, 561 (1972). In *Aguiar*, we concluded that the plaintiffs' interest in continuing to receive low–cost public housing benefits was a "property" interest.[9] 55 Haw. at 496, 522 P.2d at 1267. In *Silver v. Castle Memorial Hosp.*, 53 Haw. 475, 497 P.2d 564 (1972), we found that a medical doctor's interest in his continued practice of medicine in a federally–funded private hospital rose to the level of a constitutionally protected property interest.

The property interests in *Aguiar* and *Silver* involved basic needs of housing and employment to which the plaintiffs had "a legitimate claim of entitlement." In contrast, the property interests asserted by the Appellants who oppose the SMA use permit in this case are of an aesthetic and environmental nature. While we have recognized the importance of aesthetic and environmental interests in determining an individual's standing to contest the issue, *Life of the Land, Inc. v. Land Use Comm'n*, 61 Haw. 3, 8, 594 P.2d 1079, 1082 (1979), we have not found that such interests rise to the level of "property" within the meaning of the due process clause, and Appellants refer us to no authorities so holding.[10]

---

[9] Since the governmental body involved, the Hawaii Housing Authority, was an "agency" as defined by Chapter 91, HAPA procedures were statutorily invoked and it was unnecessary for us to determine what procedures were constitutionally required. 55 Haw. at 495–96, 522 P.2d at 1267.

[10] The California Supreme Court has recognized that land use decisions which substantially affect the property rights of owners of adjacent parcels may constitute deprivations of property within the context of procedural due process. *See, e.g., Horn v. County of Ventura*, 24 Cal. 3d 605, 156 Cal. Rptr. 718, 596 P.2d 1134, 1139 (1979); *Scott v. City of Indian Wells*, 6 Cal. 3d 541, 99 Cal. Rptr. 745, 492 P.2d 1137 (1972). None of the Appellants in this case are owners of property contiguous to the development which is the subject of the SMA use permit application.

Even if we assume, *arguendo*, that Appellants' visual and environmental interests constitute "property" interests within the meaning of the due process clause, no due process violation appears.

Due process is not a fixed concept requiring a specific procedural course in every situation. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 2600, 33 L. Ed. 2d 484, 494 (1972). The full rights of due process present in a court of law, including presentation of witnesses and cross-examination, do not automatically attach to a quasi-judicial hearing. *See Goss v. Lopez*, 419 U.S. 565, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975); *Arnett v. Kennedy*, 416 U.S. 134, 94 S. Ct. 1633, 40 L. Ed. 2d 15 (1974). The basic elements of procedural due process of law require notice and an opportunity to be heard at a meaningful time and in a meaningful manner before governmental deprivation of a significant property interest. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18, 32 (1976); *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 605-606, 95 S. Ct. 719, 722, 42 L. Ed. 2d 751, 756-57 (1975).

Determination of the specific procedures required to satisfy due process requires a balancing of several factors: (1) the private interest which will be affected; (2) the risk of an erroneous deprivation of such interest through the procedures actually used, and the probable value, if any, of additional or alternative procedural safeguards; and (3) the governmental interest, including the burden that additional procedural safeguards would entail. *Mathews v. Eldridge*, 424 U.S. at 335, 96 S. Ct. at 903, 47 L. Ed. 2d at 33; *Silver v. Castle Memorial Hosp.*, 53 Haw. at 484, 497 P.2d at 571.

Assuming for present purposes that Appellants can demonstrate protectible property interests sufficient to trigger procedural due process protection, we must weigh those interests against the risk of erroneous deprivation through the procedures actually provided by the Council, the probable value of providing an adjudicatory-type hearing, and the Council's interest in adhering to its current procedures. We find, in considering these factors, that Appellants' rights to procedural due process were satisfied by notice and an opportunity to be heard, and that the due process clause does not require the additional procedures sought by Appellants.

An examination of the record in this case reveals that the Council provided ample notice of the public hearings and in fact Appellants do not

complain that they did not receive adequate notice. The Council complied with its own notice procedures which require notice be given to all property owners within 300 feet of the affected property as well as to all owners of all property described in the permit application. Published notice was also provided. *See* Revised Ordinances § 33–5.3.

The record also reveals that Appellants were afforded numerous opportunities to be heard. City Clerk Raymond Pua submitted an affidavit listing *sixteen* separate public meetings or hearings in which members of the public were permitted to address the DLU or City Council regarding Kaiser's SMA use permit application. In substance, all interested persons were given the opportunity to present their positions orally and in writing for the purpose of adding to the information and data available to the Council in evaluating the application and deciding whether or not to grant the permit.

Thus, Appellants were afforded numerous opportunities to present argument and testimony before the DLU, the Zoning Committee, and the Council as a whole. Several of the Appellants participated in the proceedings by presenting oral and written testimony. At no time during the proceedings were they denied the opportunity to address the Council or to ask questions of other witnesses. There is no evidence of procedural impropriety or other corruption of the hearing and decision–making processes.

We conclude, based on the record, that the proceedings conducted by the City Council in acting upon Kaiser's SMA use permit application satisfied the requirements of procedural due process. Therefore, we find no violation of the due process clause.

## IV.

Finally, we turn to Appellants' contention that the City Council's decision to provide for public hearings, while other counties have chosen to provide contested case hearings pursuant to Chapter 91, results in a denial of the equal protection of the laws. Appellants' equal protection argument appears directed at HRS § 205A–29(a) as it has been applied by the City and County of Honolulu in adopting its own SMA use permit procedures. We conclude that the City Council's practice of holding public hearings rather than contested case hearings does not violate the equal protection clause.

We recognize that, unless fundamental rights or suspect classifications are implicated, we will apply the rational basis standard of review in examining a denial of equal protection claim. *Nakano v. Matayoshi*, 68 Haw. 140, 151–52, 706 P.2d 814, 821 (1985). Under this standard, to prevail, a party challenging the constitutionality of a statutory classification on equal protection grounds has the burden of showing, with convincing clarity that the classification is not rationally related to the statutory purpose, or that the challenged classification does not rest upon some ground of difference having a fair and substantial relation to the object of the legislation, and is therefore not arbitrary and capricious. *Washington v. Fireman's Fund Ins. Cos.*, 68 Haw. 192, 199, 708 P.2d 129, 134 (1985). Thus, discrimination between classes is not per se objectionable, so long as any state of facts reasonably can be conceived to sustain it. *State v. Freitas*, 61 Haw. 262, 272, 602 P.2d 914, 922 (1979).

As we have recognized,

equal protection does not mandate that all laws apply with universality to all persons; the State "cannot function without classifying its citizens for various purposes and treating some differently from others." The legislature may not, however, . . . do so arbitrarily. The classification must be reasonably related to the purpose of the legislation.

*Fireman's Fund*, 68 Haw. at 199, 708 P.2d at 134 (quoting *Joshua v. MTL, Inc.*, 65 Haw. 623, 629, 656 P.2d 736, 740 (1982)).

The legislature in HRS § 205A–29 allowed each county "authority" to decide for itself the nature of hearings it would conduct in reviewing SMA use permit applications. In so doing, the legislature was most likely concerned that imposition of the CZMA review process not disrupt the general structure of county government. The legislative history reflects a deliberate choice by the legislature to utilize existing county authorities in the coastal zone permit process rather than creating a statewide coastal zone commission to manage coastal areas. *See* Sen. Comm. Rep. No. 143, in 1975 Senate Journal, at 916. The Committee also declared:

Rather than implement a new permit system to achieve interim control of development in the coastal zone, such control could be achieved expeditiously by requiring existing agencies to adopt guidelines pursuant to a policy established by the Legislature. Such guidelines would apply to all agency actions

including the granting of permits for actions within the coastal zone.

*Id.* at 917. Each county has its own unique resources, problems, and considerations to evaluate in deciding what hearing procedure will best suit its needs. Any resulting differences between the procedures adopted by the various counties do not result in a denial of equal protection unless they are clearly arbitrary.

The Honolulu City Council's decision to provide public hearings rather than contested case hearings was not clearly arbitrary. The legislative history of the CZMA indicates that the legislature desired to facilitate public participation in the decision–making process. *See* Senate Stand. Comm. Rep. No. 143, *supra*, at 917. Furthermore, the CZMA itself enunciates a policy to "[c]ommunicate the potential short and long–term impacts of proposed significant coastal developments early in their life–cycle and in terms understandable to the general public to facilitate public participation in the planning and review process." HRS § 205A–2(c)(7)(C).

Thus, the City Council's decision to provide for public hearings may well have been directed towards serving the legislature's goal of maximizing public participation in managing the coastal zone. In the instant case, over 100 individuals presented testimony at public meetings before the Council, thus allowing a full airing of public views regarding the proposed development's consistency with CZMA objectives, in particular the protection and preservation of coastal scenic and open space re-sources. *See* HRS § 205A–2(b)(3).

Thus, there exists in this case a reasonable state of facts to support the County's procedure on equal protection grounds. Consequently, we find that the difference in procedures between Honolulu and the other counties does not constitute a violation of the equal protection clause.

## V.

In conclusion, we hold that the Honolulu City Council, as the legislative branch of the City and County of Honolulu, is exempt from the procedural requirements of HRS Chapter 91 when acting upon SMA use permit applications. Furthermore, we find no violation of Appellants' rights of due process or equal protection. Accordingly, we affirm the judgment of

the court below upholding the validity of the SMA use permit issued to Appellee Kaiser.

*Ronald A. Albu* (*Gerard A. Jervis* with him on the briefs) for Appellants Sandy Beach Defense Fund.

*Jane H. Howell*, Deputy Corporation Counsel, for Appellee City Council of the City and County of Honolulu.

*Kenneth R. Kupchak* (*R. Charles Bocken* and *Robert H. Thomas* with him on the answering brief, and *Kamala J. Larsen* with them on the supplemental brief; of counsel, Damon, Key, Char & Bocken) for Appellees Kaiser Hawaii Kai Development Co. and Kaiser Development Co.

*Steven S. Michaels*, Deputy Attorney General, on the brief for Amicus Curiae State of Hawaii.

## DISSENTING OPINION OF NAKAMURA, J.

"This appeal," as the court notes at the outset, "involves a challenge to the validity of the procedures employed by . . . the City and County of Honolulu . . . when acting upon applications for Special Management Area (SMA) use permits pursuant to the Coastal Zone Management Act (CZMA), Hawaii Revised Statutes (HRS), Chapter 205A." The dispositive question on appeal, put bluntly and succinctly, is whether procedures essentially "political" in nature satisfy the demands of due process as they apply to administrative proceedings. The court concludes the procedures do so and affirms the judgment of the circuit court. I cannot join my colleagues because their decision and opinion manifest a "talismanic reliance on labels" rather than a "sensitive consideration of the procedures required [in the circumstances] by due process." *Board of Curators v. Horowitz*, 435 U.S. 78, 106 (1978) (Marshall, J., dissenting) (footnote omitted).

### I.

### A.

The Coastal Zone Management Act represents "a comprehensive State regulatory scheme to protect the environment and resources of our shoreline areas." *Mahuiki v. Planning Comm'n*, 65 Haw. 506, 517, 654

P.2d 874, 881 (1982). And any development of real property in areas designated as special management areas must be consistent with the objectives and policies of the Act. The implementation of its provisions, however, "has been delegated in large part to the counties, and they are responsible for the administration of the special management area use permit procedure and requirements." *Id.* "State primacy nevertheless has been retained as HRS §§ 205A–4 and 205A–28 make clear, and the legislature has sought to maintain the integrity of its declared policy by providing guidelines in HRS § 205A–26 to be followed by the counties in reviewing applications for SMA use permits." *Id.* at 517–18, 654 P.2d at 881 (footnote omitted).

By virtue of HRS § 205A–26(2) no development in a special management area can be approved unless the county permit–granting authority first finds:

(A) That the development will not have any substantial adverse environmental or ecological effect, except as such adverse effect is minimized to the extent practicable and clearly outweighed by public health, safety, or compelling public interests. Such adverse effects shall include, but not be limited to, the potential cumulative impact of individual developments, each one of which taken in itself might not have a substantial adverse effect, and the elimination of planning options;

(B) That the development is consistent with the objectives, policies, and special management area guidelines of this chapter and any guidelines enacted by the legislature; and

(C) That the development is consistent with the county general plan and zoning.

The City and County of Honolulu's legislative arm designated itself as the county permit–granting authority pursuant to HRS § 205A–22; it also adopted procedures governing the consideration of special management area use permit applications pursuant to HRS § 205A–29. These procedures are delineated in chapter 33 of the Revised Ordinances of Honolulu. Section 33–5.3 of the relevant ordinance, consistently with HRS § 205A–29, provides for public hearings on permit applications; but

it is silent on whether the contested–case procedures of the Hawaii Administrative Procedure Act, HRS chapter 91, or other procedures are to be followed. Section 33–9.1 of the ordinance further states that "[a]ppeals shall be in accordance with section 205A–6, Hawaii Revised Statutes[,]" which "affords an interested party an alternative remedy for·an agency's noncompliance with the CZMA by authorizing a civil action in which a circuit court 'shall have jurisdiction to provide any relief as may be appropriate.' HRS § 205A–6(c)." *Kona Old Hawaiian Trails Group v. Lyman*, 69 Haw. ____, ____, 734 P.2d 161, 169 (1987).

### B.

The developer's application for a permit was received in February of . 1986, and the City's Department of Land Use conducted a hearing thereon in April of 1986.[1] The department's recommendation of approval of the proposed development was forwarded to the City Council shortly thereafter. The Council reviewed the matter on a number of occasions and scheduled a public hearing approximately a year after receiving the department's recommendation. The hearing was attended by over eighty persons who were allowed to express their objections to or support for the proposed development. In format, the hearing was no different from hearings conducted by the Council in considering proposals for legislative action. Further testimony was received at a Council meeting held on April 15, 1987 and the development permit was granted on the same day.

Several organizations and individuals who voiced objections to the development challenged the Council action by filing two suits in the circuit court on May 12, 1987. They invoked the court's jurisdiction under HRS § 91–14(g) in one and under HRS § 205A–6 in the other. The circuit court dismissed the suits on January 29, 1988, agreeing with the City and the developer that the sole issue in the case, whether the Council was obliged to conduct a contested case hearing before issuing a development permit, had been decided earlier when the plaintiffs' motion for summary judgment was denied. The plaintiffs perfected a timely appeal thereafter.

---

[1] The department's role in the processing of permit applications is merely advisory. Thus, the hearing it conducted was not a contested–case hearing within the meaning of the Hawaii Administrative Procedure Act. *See* HRS § 91–1(5).

## II.

### A.

In affirming the judgment of the circuit court, this court concludes: (1) "the City Council, as the legislative branch of the County, is not subject to the procedural requirements of [the Hawaii Administrative Procedure Act] when acting in either a legislative or non–legislative capacity[;]" (2) "the legislature intended the hearing held by the county authority in conjunction with the application for an SMA use permit [to] be informational in nature in order to permit members of the public to present their views and relevant data as an aid to the administrative decision on the particular application as well as long–term planning policy for the entire coastal area[;]" (3) the interests Appellants sought to protect did not "rise to the level of 'property' within the meaning of the due process clause[;]" and (4) assuming "that Appellants can demonstrate protectible property interests sufficient to trigger procedural due process protection," the proceedings before the Council "satisfied the requirements of procedural due process."

Unlike my colleagues, I conclude: (1) the exemption of the legislative branch from coverage under the Administrative Procedure Act is of no consequence; (2) the hearing conducted by the Council could not have been "informational in nature"; (3) the Appellants have standing to challenge the Council action in court; and (4) the hearing conducted by the Council did not meet the demands of due process.

The court's opinion, in my view, exhibits an insensitivity to the objectives and policies of the Coastal Zone Management Act, the public and private interests protected thereby, and the demands of due process. Moreover, the opinion in no way explains how the procedures followed by the Council could possibly meet the requirements of due process in a

case where a property owner's permit application is denied after a council "hearing" and he "appeals" from the resolution denying the application "in accordance with section 205A–6, Hawaii Revised Statutes[,]" as directed by section 33–9.1 of the Revised Ordinances of Honolulu.

## B.

Inasmuch as the City Council "administered a law already in existence" when it issued the use permit, our concern in this appeal is with administrative law, the branch of the law that "sets forth the powers that may be exercised by administrative agencies, lays down the principles governing the exercise of those powers, and provides legal remedies to those aggrieved by administrative action." B. Schwartz, *Administrative Law* § 1.1, at 2 (2d ed. 1984). Among the basic principles that hold administrative action to the rule of law are the following:

> (1) government must practice fairness in its dealings with the citizen; and
>
> (2) an administrative agency does not have the last word on any action taken by it.

*See* B. Schwartz, *Fashioning An Administrative Law System*, 40 Admin. L. Rev. 415, 419–31 (1988).

"Fundamental fairness" or "due process" is "a flexible concept." *Walters v. National Ass'n of Radiation Survivors*, 473 U.S. 305, 320 (1985).

> When the courts had to deal with the applicability of procedural due process to administrative agencies, they based their answer upon the distinction between legislative and judicial powers. If the case involved rulemaking, the courts naturally treated the administrative exercise of legislative powers similarly to the direct exercise of power by the legislature. The agency was no more bound by constitutional procedural requirements than the legislature itself when it enacts a statute. If adjudication was involved, the courts had a ready analogy in the judicial process.

B. Schwartz, *Administrative Law* § 5.6, at 211.

At bottom, in proceedings designed to apply policy–type standards in particular situations, the persons whose protected interests will be affected by the forthcoming administrative action "must be given notice and

an opportunity to present their side of the case in a full and fair hearing." B. Schwartz, *supra*, 40 Admin. L. Rev. at 424; *see also Mortensen v. Board of Trustees*, 52 Haw. 212, 473 P.2d 866 (1970) (An applicant for disability retirement benefits from the State Employees' Retirement System is entitled to a trial–type hearing). And the impartial decisionmaker's ruling must "rest solely on the legal rules and evidence adduced at the hearing." *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970).

Obviously too, the decisionmaker cannot have the last word on whether his decision is consistent with the statute that authorized him to act and whether there was fairness in the procedures he followed. "The supremacy of law demands that there shall be opportunity to have some court decide whether an erroneous rule of law was applied; and whether the proceeding in which facts were adjudicated was conducted regularly." *St. Joseph Stock Yards Co. v. United States*, 298 U.S. 38, 84 (1936) (Brandeis, J., concurring).

### III.

#### A.

The court recognizes that "the City Council's approval of Kaiser's SMA use permit application was a non–legislative act because it administered a law already in existence, the Coastal Zone Management Act." Relying on "the plain language of HRS § 91–1 and its legislative history," it nonetheless concludes "the City Council, as the legislative branch of the County, is not subject to the procedural requirements of HAPA when acting in either a legislative or non–legislative capacity."

Granted, an "agency" within the meaning of the term as defined by HRS § 91–1 does not include "those in the legislative or judicial branches." But the "exception" from coverage under the Administrative Procedure Act by no means freed the Council from the fundamental requirement that any power it possesses, legislative or administrative, "be exercised in subordination to law." B. Schwartz, *supra*, 40 Admin. L. Rev. at 415. It is immaterial whether the Council is subject to the procedural requirements of HAPA or not. The Council acted in a quasi–judicial

capacity in administering a State law; it therefore was subject to the requirements of due process.

## B.

Procedural due process demanded that the Council conduct a full and fair hearing in the judicial sense. The court, however, concludes "the hearing held by the county authority in conjunction with the application for an SMA use permit [was only intended to] be informational in nature." In its view, this justified the legislative–type hearing conducted by the Council. But protected rights and interests were at stake, and a hearing more in the nature of a judicial, rather than a legislative, hearing was in order.

## C.

The court, however, rules a "trial–type adjudicatory hearing" was not necessary. "[I]n order to assert a right to procedural due process," it states, one "must possess an interest which qualifies as 'property' within the meaning of the constitution." Aesthetic and environmental interests, it holds, do not "rise to the level of 'property' within the meaning of the due process clause[.]" Yet as the court observes, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

The particular situation involved an application for a permit to develop land in an area where the legislature has declared special controls on developments "are necessary to avoid permanent losses of valuable resources and the foreclosure of management options, and to ensure that adequate access . . . to public owned or used beaches, recreation areas, and natural reserves is provided." HRS § 205A–21. Implicated in the proceeding in question were the rights and interests of a property owner who owns land in the special management area extending inland from the shoreline, a developer who has contracted to develop the land, owners of nearby property, persons residing in the area of the proposed development, and the general public. The Council action was one "authorizing development, the valuation of which [far] exceeds $65,000 [and] which may have a substantial adverse environmental or ecological effect[.]" HRS § 205A–22(7). It escapes me why Appellants were not entitled to

invoke procedural protections consistent with due process in the judicial sense.

That the "rights" of the landowner and the developer were subject to protection, of course, is beyond cavil; no one would question that they could "assert a right to procedural due process" in the processing of their permit application. While they have no need to invoke such right under the circumstances, the court's decision consigns anyone seeking a special management area use permit, as well as anyone objecting to its issuance, to the vagaries of the political process where the decision will not "rest solely on the legal rules and evidence adduced at hearing." *Goldberg v. Kelly*, 397 U.S. at 271.

But I believe the Appellants also have protected interests that allowed them to invoke procedural due process. These interests are those established and made judicially cognizable by the legislature under the statutory scheme designed "to preserve, protect, and where possible, to restore the natural resources of the coastal zone of Hawaii." HRS § 205A–21. Among the natural resources designated for preservation, protection, and restoration are "recreational resources," "historic resources," "scenic and open space resources," and "coastal ecosystems." *See* HRS § 205A–2. In my view they constitute property "owned" by the public.

The mandate to the counties is that in implementing the foregoing objectives of the coastal zone management program "full consideration shall be given to ecological, cultural, historic, and esthetic values as well as to needs for economic development." HRS § 205A–4. And "any person or agency" is given a right to "commence a civil action" seeking to remedy an agency's failure to comply with the Coastal Zone Management Act. HRS § 205A–6. I can only conclude this vested concerned members of the public with protectible interests related to the natural resources of the coastal zone of Hawaii.

The court acknowledges that "we have recognized the importance of aesthetic and environmental interests in determining an individual's standing to contest the issue[.]" But since "we have not found that such interests rise to the level of 'property' within the meaning of the due process clause," it implies the Appellants were not subjected to deprivation they can complain about. Still, we are expounding legislatively created

interests in natural resources deemed worthy of protection through judicial processes invocable by "any person or agency."

D.

Though it finds no grounds for the assertion by Appellants of a right to due process, the court gratuitously concludes "the proceedings conducted by the City Council in acting upon Kaiser's SMA use permit application satisfied the requirements of procedural due process." What the Council did was aptly described by the circuit court when it said:

> They're acting as a legislature; they have legislative hearings. People are given notice, they're allowed to show up and be heard, and then the politics decide the issue, whichever way they go.

This court characterizes the hearing before the Council as being "informational in nature in order to permit members of the public to present their views and relevant data as an aid to the administrative decision on the particular application as well as long-term planning policy for the entire coastal area."

But as we observed, a legislative or informational hearing does not satisfy the requirements of due process where legal rights and interests are to be determined by "the administrative decision on the particular application" of a statute enacted by the legislature. A particular application of the guidelines the Council was bound by law to follow turned on facts. "[W]here important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. at 269 (citation omitted). Just being "allowed to show up and be heard" is not enough.

Due process further requires that the evidence proving an opponent's case be "disclosed to the individual so that he has an opportunity to show . . . it is untrue." *Greene v. McElroy*, 360 U.S. 474, 496 (1959). "A hearing is not judicial, at least in any adequate sense, unless the evidence can be known." *West Ohio Gas Co. v. Public Util. Comm'n (No. 1)*, 294 U.S. 63, 69 (1935). It was conceded at oral argument that there were ex parte contacts between members of the Council and persons interested in the outcome of the proceeding. If the Council were acting in its customary role, this would have posed no problem; but it was not.

Ex parte contacts breach a fundamental principle of administrative law, "exclusiveness of the record." Thereunder, the "decisionmaker's conclusion must rest solely on the evidence adduced at the hearing." B. Schwartz, *Administrative Law* § 7.13, at 367 (footnote omitted).

> The exclusiveness principle and its foundation were well stated by Chief Justice Vanderbilt: "'Where a hearing is prescribed by statute, nothing must be taken into account by the administrative tribunal in arriving at its determination that has not been introduced in some manner into the record of the hearing.' . . . Unless the principle is observed, the right to a hearing itself becomes meaningless. Of what real worth is the right to present evidence and to argue its significance at a formal hearing, if the one who decides the case may stray at will from the record in reaching his decision? Or consult another's findings of fact, or conclusions of law, or recommendations . . . ?"

*Id.* at 367–68 (footnote omitted).

Prevention of ex parte contacts, however, is not the only purpose served by the principle. There are other sound reasons why it is followed in administrative law:

> First, it helps ensure that the agency does not make decisions without an adequate basis in fact; second, it gives opposing parties the opportunity to challenge the agency's reasoning process and the correctness of its decision; and third, it affords reviewing courts full opportunity to evaluate the decision.

*Id.* at 368 (footnote omitted).

Since the Appellants were not afforded due process, I would vacate the judgment and remand the case to the circuit court with instructions to void the permit issued to Kaiser Development Company.