**Electronically Filed
Supreme Court
SCWC-15-0000478
16-JUN-2021
09:04 AM
Dkt. 35 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

PROTECT AND PRESERVE KAHOMA AHUPUA'A ASSOCIATION,
an unincorporated association,
MICHELE LINCOLN, MARK ALLEN, LINDA ALLEN,
and CONSTANCE B. SUTHERLAND,
Respondents/Plaintiffs-Appellants,

vs.

MAUI PLANNING COMMISSION, COUNTY OF MAUI, and
STANFORD CARR DEVELOPMENT, LLC,
a domestic limited liability company,
Petitioners/Defendants-Appellees/Appellees.

_____

SCWC-15-0000478

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-15-0000478; CIVIL NO. 14-1-0616(1))

JUNE 16, 2021

RECKTENWALD, C.J., NAKAYAMA, McKENNA, WILSON, AND EDDINS, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I.    Introduction

This case arises from Stanford Carr Development, LLC's

("Carr") application for a Special Management Area ("SMA") use

permit to build affordable housing ("the Project") within the County of Maui's SMA.  The Protect and Preserve Kahoma Ahupua'a Association ("PPKAA") filed a petition to intervene in the SMA use permit application proceedings with the Maui Planning Commission ("Commission") seeking to address the Project's environmental and aesthetic impacts.  The Commission denied PPKAA's petition on the grounds that it failed to demonstrate its interests were different from those of the general public, as required by the Rules of Practice and Procedure for the Maui Planning Commission ("MPC") § 12-201-41 (2010).  The Commission then approved Carr's SMA use permit application.

PPKAA appealed the Commission's denial of its petition to intervene and approval of Carr's SMA use permit application to the Circuit Court of the Second Circuit ("circuit court"), which affirmed the Commission's decisions.  On appeal, the Intermediate Court of Appeals ("ICA") determined PPKAA had standing to intervene as a matter of right and that PPKAA was denied procedural due process to protect its Hawai'i Constitution article XI, section 9 right to a clean and healthful environment, as defined by the Coastal Zone Management Act ("CZMA").  The ICA also held the Commission was required to make findings on the Project's consistency with the Maui County general and community plans pursuant to Hawai'i Revised Statutes

2

("HRS") § 205A-26(2)(C) (2017). The ICA vacated the circuit court's decision and remanded to the Commission.

On review of Carr's certiorari application, we agree with the ICA that (1) PPKAA sufficiently demonstrated that it had standing to intervene in the SMA use permit proceedings; (2) the CZMA is a law relating to environmental quality for the purposes of article XI, section 9 of the Hawai'i Constitution and that PPKAA was denied procedural due process to protect its right to a clean and healthful environment; and (3) the Commission was required to make findings on the Project's consistency with the general and community plans pursuant to HRS § 205A-26(2)(C).

We therefore affirm the ICA's October 13, 2020 judgment vacating the circuit court's June 19, 2015 findings of fact, conclusions of law, and order denying appeal and final judgment, and we remand to the Commission for further proceedings consistent with this opinion.

## II. Background

### A. Commission proceedings

Pursuant to HRS § 205A-28 (Supp. 1979), "[n]o development shall be allowed in any county within the [SMA] without obtaining a permit in accordance with this part." The Commission implements the CZMA, including SMA management under HRS ch. 205A. See HRS § 205A-1 (defining "authority" as the county planning commission); HRS § 205A-26; Maui County Charter

3

§ 8-8.4 (2002) (stating that the Commission acts "as the authority in all matters related to the Coastal Zone Management law"). The Commission is part of the Maui County Department of Planning ("Planning Department"). See Maui County Department of Planning, Department Organization Chart FY20 (2019).[1]

On September 27, 2012, the Planning Department received Carr's SMA use permit application for the Project. The Project proposed the construction of approximately 203 housing units and three resident parks on 24.354 acres of undeveloped land south of the Kahoma stream channel. The project site was located within the County of Maui's SMA and within "Project District 4" of the West Maui Community Plan. The West Maui Community Plan described Project District 4 as follows:

> This project district involves approximately 24 acres bounded by Kahoma Stream, Front Street, Kenui Street, and Honoapiilani Highway. The project district is intended to provide a mixture of commercial/business and multi-family and senior citizen residential uses. There shall also be 6 acres of park land within the project district, including a linear park or greenway adjacent to the south bank of Kahoma Stream, from Honoapiilani Highway to Front Street, at least 60 feet wide and approximately 1.5 acres in size. The extension of Wainee Street from its present terminus at Kenui Street to Front Street, as well as the realignment of Kenui Street shall also be considered. Said roadway improvements should be developed and funded in conjunction with appropriate government agencies. The remaining acres in the project district shall be evenly divided between the commercial/business uses, and the multi-family and senior citizen residential uses, to the greatest extent practicable.

---

[1] Available at https://perma.cc/NJL5-6Q7H.

Maui County Council, West Maui Community Plan 52 (1996).[2]

Carr's application noted the Project was "partially in compliance" with the West Maui Community Plan, but it proposed a combined park area of 1.75 acres instead of the 6 acres of park land required by the community plan.  However, Carr requested that the Project be exempted as an HRS § 201H-38 (2017) affordable housing project from Maui County Code ("MCC") ch. 2.80B,[3] "General Plan and Community Plans," in order for the Project to be "deemed compliant" with the West Maui Community Plan.

On February 7, 2014, the Maui County Council ("Council") adopted Resolution no. 14-14 ("Resolution 14-14"), citing HRS § 201H-38.[4]  The resolution approved the Project subject to

_____

[2]     Available at https://perma.cc/C3Y8-DBX3.

[3]     Available at https://perma.cc/WXH8-LKMX.

[4]     HRS § 201H-38 provides, in relevant part:

        (a) The corporation may develop on behalf of the State or
        with an eligible developer, or may assist under a
        government assistance program in the development
        of, housing projects that shall be exempt from all
        statutes, ordinances, charter provisions, and rules of any
        government agency relating to planning, zoning,
        construction standards for subdivisions, development and
        improvement of land, and the construction of dwelling units
        thereon; provided that:
                (1) The corporation finds the housing project
                is consistent with the purpose and intent of
                this chapter, and meets minimum requirements of
                health and safety;
                (2) The development of the proposed housing
                project does not contravene any safety
                standards, tariffs, or rates and fees approved
                by the public utilities commission for public
                                                (continued . . .)

specified modifications, and "provided that [Carr] shall comply with all statutes, ordinances, charter provisions, and rules of governmental agencies relating to planning, zoning and construction standards for subdivisions, development and improvement of land, and the construction of units thereon, except for the exemptions specified in Exhibit '2'[.]"  Exhibit 2 included an exemption from MCC ch. 2.80B "to permit the project to proceed without obtaining a community plan amendment."

On June 5, 2014, PPKAA, pro se, filed a petition to intervene in the SMA use permit proceedings.  PPKAA described itself as "an unincorporated organization dedicated to preserving, protecting and restoring the natural and cultural environment of the Kahoma ahupua'a[.]"  PPKAA maintained that its members all owned homes within the Kahoma ahupua'a.

PPKAA argued it had standing to intervene as a matter of right under MPC § 12-201-41 (1993)[5] because its members owned

_____

utilities or of the various boards of water
supply authorized under chapter 54;
(3) The legislative body of the county in which
the housing project is to be situated shall
have approved the project with or without
modifications[.]

[5]     MPC § 12-201-41(b) provides:

All persons who have a property interest in land subject to
commission action, who lawfully reside on said land, or can
demonstrate they will be so directly and immediately
affected by the matter before the commission that their
(continued . . .)

6

land adjacent to the Project, and the Project would diminish the use, enjoyment, and rental value of their properties.  PPKAA also asserted the Project would have "adverse impacts on protected resources within the Coastal Zone Management Area," and that the interests PPKAA sought to protect were the "same interests" protected by the CZMA and the Hawai'i Constitution.  The petition listed various ways in which the Project would allegedly impact CZMA interests, including access to public beaches, adequate public recreation areas, protecting coastal ecosystems, investigating the presence of Hawaiian burial sites, and protecting scenic resources.  The petition also noted that the Project did not conform to the community plan as required by HRS § 205A-26(2)(C), and that it conflicted with the general plan's goal of protecting open spaces.[6]

On June 13, 2014, Carr filed a memorandum in opposition to PPKAA's petition to intervene, arguing PPKAA had not

---

interest in the proceeding is clearly distinguishable from that of the general public shall be admitted as parties upon timely application for intervention.

[6]     At the time the petition was filed, HRS § 205A-26(2)(C) provided: "No development shall be approved unless the authority has first found . . . [t]hat the development is consistent with the county general plan and zoning. Such a finding of consistency does not preclude concurrent processing where a general plan or zoning amendment may also be required."  (Emphasis added.)
    Additionally, MCC § 2.80B.030(B) (2014) provides in pertinent part, "The countywide policy plan, Maui island plan, and community plans authorized in this chapter are and shall be the general plan of the County[.]"  (Emphasis added.)  Therefore, in Maui County, community plans are part of the general plan.

distinguished its members' concerns from those affecting the general public, as required by MPC § 12-201-41(b).

On June 24, 2014, the Commission held its regular meeting, at which members of the public were allowed to testify for up to three minutes each regarding the Project.  Multiple PPKAA members raised concerns regarding whether the current storm drain system would be able to accommodate the Project and the effects on Hawaiian cultural and gathering rights, beach access, and traffic congestion.

The Commission then held a public hearing on Carr's SMA use permit application, during which Carr gave a presentation discussing the Project's impacts on water drainage, traffic, and environmental resources.

The Commission then heard from PPKAA on its petition to intervene, as mandated by MPC § 12-201-45 (1993).[7]  Michele Lincoln ("Lincoln") spoke on behalf of PPKAA.  Lincoln contended that PPKAA had standing to intervene and suffered injuries distinguishable from the general public.  She testified that PPKAA members lived within 500 feet of the Project and would experience the Project's impacts to traffic, beach access, tsunami evacuation congestion, the cultural and historic

---

[7]     MPC § 12-201-45 provides: "All petitions to intervene shall be heard and ruled upon prior to the commission taking final action on an application."

importance of the land, storm water drainage, scenic views, and to the sale and rental values of their properties.

Carr countered that PPKAA's petition did not show its members suffered an actual or threatened injury in fact, and that the concerns raised were not "uniquely confined to these petitioners" and would be addressed in the regular SMA permit approval process.

The Commission then denied PPKAA's petition to intervene and orally approved Carr's SMA use permit application. The Commission did not enter oral or written findings regarding Carr's SMA use permit application.

On September 23, 2014, the Commission issued its written findings of fact ("FOFs"), conclusions of law ("COLs"), and order denying PPKAA's petition to intervene. The Commission determined PPKAA was not entitled to intervention under MPC § 12-201-41(b) because it "failed to demonstrate that they will be so directly and immediately affected by the matter before the Commission that their interests are clearly distinguishable from that of the general public." The Commission also concluded that PPKAA failed to show a threatened injury traceable to Carr's actions.

On October 23, 2014, PPKAA appealed the Commission's September 23, 2014 order and June 24, 2014 oral approval of Carr's SMA use permit to the circuit court.

## B. Circuit court proceedings

### 1. PPKAA's arguments

PPKAA, now represented by counsel, argued the Commission erred in denying its motion to intervene because Hawai'i courts apply less restrictive administrative standing requirements where environmental interests are involved based on article XI, section 9 of the Hawai'i Constitution,[8] and that it had shown an "injury in fact" sufficient for standing. PPKAA also argued the Commission denied it procedural due process, and that it had been entitled to a "full hearing" under HRS ch. 91. PPKAA asserted the Commission erred in failing to find that the Project was consistent with the general and community plans, as required by HRS § 205A-36(2)(C). Although the Council had exempted Carr from obtaining plan amendments under the MCC, PPKAA argued this did not excuse Carr from the SMA permit procedures under HRS ch. 205A.

---

[8] Article XI, section 9 of the Hawai'i Constitution provides:

> Each person has the right to a clean and healthful environment, as defined by laws relating to environmental quality, including control of pollution and conservation, protection and enhancement of natural resources. Any person may enforce this right against any party, public or private, through appropriate legal proceedings, subject to reasonable limitations and regulation as provided by law.

### 2.   Carr's arguments[9]

Carr argued PPKAA was not entitled to intervention because its members' status as adjacent landowners did not confer an interest sufficient for standing, PPKAA failed to show that its interests were distinguishable from the general public, and its petition did not specify the injuries to its members.  Carr maintained PPKAA was not denied procedural due process because it was afforded a hearing on its petition to intervene and was given unlimited time for oral argument to establish standing.  Carr argued Resolution 14-14 and HRS § 201H-38 exempted the Project from the general and community plan requirements, and the Commission was not required to find that the Project was consistent with the community plan.

### 3.   Circuit court's FOFs, COLs, and order

On June 19, 2015, the circuit court issued its FOFs, COLs, and order denying PPKAA's appeal and affirming the Commission.[10]  The circuit court's COLs included the following.  PPKAA was not entitled to intervention as a matter of right because it failed to show its interests were clearly distinguishable from those of the general public.  PPKAA was afforded notice and an opportunity to be heard on its petition to intervene and was therefore not denied due process.  The Project was a qualified

---

[9]     The Commission joined Carr as a defendant-appellee.

[10]    The Honorable Rhonda I.L. Loo presided.

11

housing project under HRS ch. 201H, the Project had been granted an exemption from the general plan via Resolution 14-14, and the Commission's determination that the Project was exempt from the general plan was not clearly erroneous.

PPKAA appealed to the ICA.

## C.   ICA memorandum opinion

On September 14, 2020, the ICA issued its memorandum opinion vacating the circuit court's June 19, 2015 order and final judgment and remanding to the Commission.  Protect and Preserve Kahoma Ahupua'a Ass'n v. Maui Planning Comm'n (PPKAA), CAAP-15-0000478 (Sept. 14, 2020) (mem.).

The ICA held that the Commission restrictively interpreted MPC § 12-201-41(b)'s standing requirements because environmental plaintiffs need not assert an injury different in kind from an injury to the public to establish standing.  PPKAA, mem. op. at 8-9 (citing In re Application of Maui Elec. Co. (MECO), 141 Hawai'i 249, 270, 408 P.3d 1, 22 (2017) ("Environmental plaintiffs must meet this three-part standing test but need not assert an injury that is different in kind from an injury to the public generally.")).  This less rigorous standing requirement drew support from article XI, section 9 of the Hawai'i Constitution.  PPKAA, mem. op. at 9 (citing Sierra Club v. Dep't. of Transp., 115 Hawai'i 299, 320, 167 P.3d 292, 313 (2007)).  The ICA stated that, in order to demonstrate standing

12

to intervene, plaintiffs must demonstrate an injury in fact, which requires them to show that they suffered an actual or threatened injury fairly traceable to the defendant's actions, and that a favorable decision would likely provide relief. PPKAA, mem. op. at 9-10 (citing MECO, 141 Hawai'i at 270, 408 P.3d at 22).

Reviewing the Commission's FOF/COLs de novo, ICA determined PPKAA demonstrated a threatened injury in fact in its petition and at the June 24, 2014 public hearing, noting that PPKAA members had testified as to concerns regarding the Project's effect on storm water runoff, increased traffic, and adverse impacts on the tsunami evacuation zone. PPKAA, mem. op. at 12-15. Therefore, the ICA ruled PPKAA had been "so directly and immediately affected" by the Project that it was entitled to intervene as a matter of right in the SMA permit application proceedings. PPKAA, mem. op. at 16-17.

The ICA also held that PPKAA was denied procedural due process to protect its right to a clean and healthful environment under article XI, section 9 of the Hawai'i Constitution. PPKAA, mem. op. at 17. The ICA applied a two-step analysis in determining PPKAA had a due process right to a hearing: (1) whether PPKAA sought to protect a "property interest," and (2) if so, what specific procedures were required to protect it. PPKAA, mem. op. at 18.

13

The ICA held that the CZMA is a law relating to environmental quality that defines the right to a clean and healthful environment under article XI, section 9.  PPKAA, mem. op. at 19.  Therefore, because PPKAA's petition sought to protect environmental and aesthetic interests under the CZMA and the Hawai'i Constitution, it had asserted a protected property interest.  PPKAA, mem. op. at 18-19.

The ICA then determined that the risk to PPKAA's right to a clean and healthful environment was high absent a contested case hearing because the Project could have adverse impacts to the SMA, and PPKAA had no other meaningful opportunity to be heard because the Commission had approved the permit application on the same day it denied PPKAA's motion to intervene.  PPKAA, mem. op. at 21.  Furthermore, the burden of affording a contested case hearing was slight because the Commission was "already required to consider the concerns posited in PPKAA's petition to intervene."  Id.  Therefore, PPKAA was entitled to a contested case hearing, "which includes the right to submit evidence and argument on the impact of the Project on the asserted property interest."  PPKAA, mem. op. at 21-22.

Finally, the ICA held that the Commission was required under the CZMA to make findings on the Project's consistency with the Maui County general and community plans.  PPKAA, mem. op. at 22.  Although the Council exempted the Project from MCC

14

ch. 2.80B through Resolution 14-14, the ICA determined it did not relieve the Commission of making findings pursuant to HRS § 205A-26(2)(C), which conditioned the approval of SMA use permits on findings that "[t]he development is consistent with the county general plan and zoning." PPKAA, mem. op. at 23-24. Therefore, on remand, the Commission was required to make specific findings on the Project's consistency with the general and community plans. PPKAA, mem. op. at 24.

On October 13, 2020, the ICA filed its judgment on appeal.

**D. Certiorari application**

Carr's application for certiorari ("Application") raises five questions:

> 1. Whether the ICA gravely erred in holding that the Commission restrictively interpreted its standing requirements.
> 2. Whether the ICA gravely erred by finding that [PPKAA] sufficiently asserted threatened injuries-in-fact to its members.
> 3. Whether the ICA gravely erred by relying on the public testimony portion of the Commission hearing to support the Petition.
> 4. Whether the ICA gravely erred in holding that PPKAA was denied procedural due process to protect their right to a clean and healthful environment under article XI, section 9, as defined by the [CZMA].
> [5.] Whether the ICA gravely erred in holding that the Commission was required to make specific findings on the Project's consistency with the Maui County General and Community Plans.

**III. Standards of Review**

**A. Constitutional law**

This court reviews questions of constitutional law by exercising our own independent constitutional judgment based on

15

the facts of the case. State v. Phua, 135 Hawai'i 504, 511-12, 353 P.3d 1046, 1053-54 (2015). Therefore, questions of constitutional law are reviewed under the right/wrong standard. Phua, 135 Hawai'i at 512, 353 P.3d at 1054.

## B. Administrative agency appeals

> Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. The standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91–14(g) (1993) to the agency's decision.

Sierra Club v. Office of Planning, 109 Hawai'i 411, 414, 126 P.3d 1098, 1101 (2006) (citations and alterations omitted).

HRS § 91-14(g) (Supp. 2016) provides:

> (g) Upon review of the record, the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the agency;
> (3) Made upon unlawful procedure;
> (4) Affected by other error of law;
> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

## IV. Discussion

## A. PPKAA had standing to intervene in the SMA permit application proceedings

Carr argues the ICA erred in holding the Commission restrictively interpreted its standing requirements and

16

misapplied the standard for standing because PPKAA failed to show that it suffered an injury in fact.[11]

The ICA determined that the Commission had restrictively interpreted its standing requirements, noting environmental plaintiffs need not assert an injury different in kind from the general public, and that this "less rigorous standing requirement" draws support from article XI, section 9 of the Hawai'i Constitution. PPKAA, mem. op. at 9, 11-12 (citing Sierra Club, 115 Hawai'i at 320, 167 P.3d at 313). The ICA then held that PPKAA had established a threatened injury in fact and demonstrated it was "so directly and immediately affected" that it was entitled to intervention as a matter of right. PPKAA, mem. op. at 12-17.

Our decision in MECO has clarified that petitioners have a right to intervene where they have established their right to a clean and healthful environment pursuant to article XI, section 9 of the Hawai'i Constitution. 141 Hawai'i at 266-67, 408 P.3d at 18-19. As discussed in the next section, PPKAA had a protectable property interest in the right to a clean and

---

[11] Carr also argues the ICA erred by relying on the public testimony portion of the Commission's hearing in determining that PPKAA demonstrated an injury in fact because the public testimony was not presented as part of PPKAA's petition. However, the ICA's discussion of the public testimony was in the context of the Commission's unchallenged FOFs in its order denying PPKAA's petition to intervene, which summarized the PPKAA members' public testimony and which Carr prepared. PPKAA, mem. op. at 14. Carr also responded to the public testimony concerns during the hearing on its SMA use permit application.

healthful environment, as defined by the CZMA.[12]  PPKAA "must also show that it is entitled to request a review of the agency determination," which requires PPKAA to establish "an actual or threatened injury [that is] fairly traceable to the defendant's actions; and a favorable decision would likely provide relief for the plaintiff's injury."  Id. at 270, 408 P.3d at 22 (quotation marks and citations omitted).  The ICA correctly concluded that PPKAA "assert[ed] harm to legally protected interests in a clean and healthful environment."  Id.  As the ICA identified, PPKAA alleged "direct personal environmental and aesthetic interests, including those of adjacent landowners" and "potential actual injury from the Project" which was "fairly traceable to Carr Development's SMA permit application" and from which the Commission's decision could provide relief.  PPKAA, mem. op. at 16.  Therefore, PPKAA had standing to intervene in the SMA permit application proceedings.

**B.  PPKAA was denied procedural due process to protect its right to a clean and healthful environment under article XI, section 9 of the Hawai'i Constitution, as defined by the CZMA**

Carr argues PPKAA was not denied procedural due process because unilateral expectations of aesthetic and environmental

---

[12]  Furthermore, it appears that PPKAA's property interest in the right to a clean and healthful would entitle it standing under MPC § 12-201-41(b). MPC § 12-201-41(b) provides that "[a]ll persons who have a property interest in land subject to commission action . . . shall be admitted as parties upon timely application for intervention."  MPC ch. 201 does not define "property" or "property interest."

values do not constitute a protectable property interest, citing Sandy Beach Defense Fund v. City Council of Honolulu (Sandy Beach), 70 Haw. 361, 773 P.2d 250 (1989).

This court has stated that "[c]onstitutional due process protections mandate a hearing whenever the claimant seeks to protect a 'property interest,' in other words, a benefit to which the claimant is legitimately entitled." Pele Defense Fund v. Puna Geothermal Venture, 77 Hawai'i 64, 68, 881 P.2d 1210, 1214 (1994). This court conducts a two-step analysis to determine whether there was a due process right to a contested case hearing, considering: "(1) [whether] the particular interest which [the] claimant seeks to protect by a hearing [is] 'property' within the meaning of the due process clauses of the federal and state constitutions, and (2) if the interest is 'property,' what specific procedures are required to protect it." Sandy Beach, 70 Haw. at 376, 773 P.2d at 260.

Sandy Beach involved a challenge to an SMA use permit application by community members, some of whom lived near the proposed development. 70 Haw. at 366, 773 P.2d at 254. The community group claimed their personal, economic, and aesthetic interests, such as their view of the ocean and value of their properties, would be injured by the development. 70 Haw. at 367, 773 P.2d at 255. We stated that "[t]o have a property interest in a benefit, a person clearly must have more than an

19

abstract need or desire for it.  [They] must have more than a unilateral expectation to it.  [They] must, instead, have a legitimate claim of entitlement to it."  70 Haw. at 377, 773 P.2d at 260 (citations omitted).  We then held that the community group's interests were "of an aesthetic and environmental nature" and did not rise to the level of a property interest within the meaning of the due process clause of the Hawai'i Constitution.  70 Haw. at 377, 773 P.2d at 261.

However, this court distinguished Sandy Beach in MECO, which involved the Sierra Club's assertion of its members' constitutional right to a clean and healthful environment under article XI, section 9 of the Hawai'i Constitution.  MECO, 141 Hawai'i at 264-65, 408 P.3d at 16-17.  This court noted that the petitioners in Sandy Beach "did not identify any source granting them a substantive legal right to enforcement of environmental laws."  141 Hawai'i at 265, 408 P.3d at 17.  In contrast, the Sierra Club's asserted right to a clean and healthful environment was "not a freestanding interest in general aesthetic and environmental values" or a "unilateral expectation," but a "right guaranteed by the Constitution and statutes of this state."  141 Hawai'i at 264-65, 408 P.3d at 16-17.

As in MECO, PPKAA did not merely assert unilateral expectations of aesthetic and environmental values, but a

20

protectable property interest in its constitutional right to a clean and healthful environment under article XI, section 9 of the Hawaiʻi Constitution.  Article XI, section 9 states that "[e]ach person has the right to a clean and healthful environment, as defined by laws relating to environmental quality, including control of pollution and conservation, protection and enhancement of natural resources."  This court has held that article XI, section 9 is self-executing and that the right to a clean and healthful environment is "defined by existing law relating to environmental quality."  MECO, 141 Hawaiʻi at 261, 408 P.3d at 13; see Cty. of Hawaiʻi v. Ala Loop Homeowners (Ala Loop), 123 Hawaiʻi 391, 417, 235 P.3d 1103, 1129 (2010), abrogated on other grounds by Tax Found. v. State, 144 Hawaiʻi 175, 439 P.3d 127 (2019).

HRS ch. 205A is a law "relating to environmental quality" for the purposes of article XI, section 9.  The stated purpose of HRS ch. 205A is to "preserve, protect, and where possible, to restore the natural resources of the coastal zone of Hawai[ʻ]i."  HRS § 205A-21 (Supp. 1977).  The provisions of HRS ch. 205A also "expressly require consideration of issues relating to the preservation or conservation of natural resources."  Ala Loop, 123 Hawaiʻi at 410, 235 P.3d at 1122; see HRS § 205A-4 (Supp. 1989) (providing that agencies "shall give full consideration to ecological, cultural, historic, esthetic, recreational, scenic,

21

and open space values" in implementing the CZMA program); HRS § 205A-26 (Supp. 1994) (setting guidelines for the review of developments proposed in special management areas); HRS § 205A-28 (Supp. 1979) (prohibiting development in special management areas without a permit).

Additionally, HRS § 607-25 (Supp. 1997), which authorizes the recovery of attorney's fees against private parties who undertake development without the approvals required under various laws, including chapter 205A, also "reflects the legislature's determination that chapter 205[A] is an environmental quality law."[13]  Ala Loop, 123 Hawai'i at 410, 235 P.3d at 1122.  As we recognized in Ala Loop, the legislative purpose of HRS § 607-25 was to allow the award of attorney's fees in cases involving illegal development by private parties "to improve the implementation of laws to protect health, environmental quality, and natural resources[.]"  Id. (quoting 1986 Haw. Sess. Laws Act 80, § 1 at 104-05) (emphasis added). In enacting HRS § 607-25, the legislature recognized that HRS ch. 205A "implements the guarantee of a clean and healthful environment established by article XI, section 9."  Id.

---

[13]    HRS § 607-25(c) provides: "For purposes of this section, the permits or approvals required by law shall include compliance with the requirements for permits or approvals established by chapters . . . 205A[.]"  (Emphasis added.)

Therefore, HRS ch. 205A is a "law relating to environmental quality" for the purposes of article XI, section 9.

Having determined that PPKAA asserted a protected property interest to a clean and healthful environment, we turn to whether PPKAA's right to procedural due process was violated. Procedural due process "requires that parties be given a meaningful opportunity to be heard.  This implies the right to submit evidence and argument on the issues."  Application of Hawai'i Elect. Light Co., 67 Haw. 425, 430, 690 P.2d 274, 278 (1984).  However, "[d]ue process is not a fixed concept requiring a specific procedural course in every situation," and "calls for such procedural protections as the particular situation demands."  Sandy Beach, 70 Haw. at 378, 773 P.2d at 261 (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)) (emphasis added).  In determining the procedures required to comply with constitutional due process, courts consider the following factors: "(1) the private interest which will be affected; (2) the risk of an erroneous deprivation of such interest through the procedures actually used, and the probable value, if any, of additional or alternative procedural safeguards; and (3) the governmental interest, including the burden that additional procedural safeguards would entail."  Id.

Here, the private interest was PPKAA's constitutional right to a clean and healthful environment.  The risk of an erroneous

23

deprivation of PPKAA's interest was high absent PPKAA's participation in the contested case hearing because the Project could have adverse and long-term environmental impacts to the SMA. See MECO, 141 Hawai'i at 266, 408 P.3d at 18. As the ICA recognized, PPKAA raised concerns regarding the Project's potential impacts to the SMA, including loss of scenic and open space resources, drainage and runoff impacts, and impacts on the tsunami evacuation zone. PPKAA, mem. op. at 14-15. While PPKAA members testified about the Project at the public hearing and the hearing on its petition to intervene, they were not able to submit evidence or cross-examine opposing witnesses, which the Commission's rules would have allowed them the opportunity to do had their petition been granted.[14] See MECO, 141 Hawai'i at 269, 408 P.3d at 21. As adjacent landowners to the Project, PPKAA's members would likely bear the brunt of adverse impacts to the SMA, and their knowledge of the area could have supplemented the findings of the environmental assessment. Finally, as the Commission was already required to consider the CZMA in making its decision on Carr's SMA use permit, it would not unduly burdensome to allow PPKAA to participate in the contested case hearing. 141 Hawai'i at 266, 408 P.3d at 18.

---

[14] The Commission's rules provide for procedures where intervention is granted and requires pre-hearing mediation, the appointment of a hearing officer, and the opportunity for cross-examination, discovery, and the submission of evidence. MPC §§ 12-201-53 (1993); 12-201-54 (1993); 12-201-60 (1993); 12-201-67 (1993); 12-201-69 (1993).

24

Therefore, the ICA did not err in holding that PPKAA was denied procedural due process under the circumstances and was entitled to participate in a contested case hearing on Carr's SMA use permit application.

**C.    The Commission was required to find the Project was consistent with the community plan pursuant to HRS § 205-26(2)(C)**

Carr argues the ICA erred in holding the Commission was required to make findings on the Project's consistency with the community plan because Resolution 14-14 exempted the Project from MCC ch. 2.80B to "permit the project to proceed without obtaining a community plan amendment."  Carr further contends that, under HRS § 201H-38, qualified housing projects "shall be exempt" from all statutes relating to the development and improvement of land, which would include HRS § 205A-26(2)(C).

HRS § 201H-38(a) states that, subject to certain provisions:

> The corporation may develop on behalf of the State or with an eligible developer, or may assist under a government assistance program in the development of, housing projects that shall be exempt from all statutes, ordinances, charter provisions, and rules of any government agency relating to planning, zoning, construction standards for subdivisions, development and improvement of land, and the construction of dwelling units thereon[.]

(Emphasis added.)

The ICA held that, while Resolution 14-14 exempted the Project from MCC ch. 2.80B, it did not relieve the Commission from its duties under HRS § 205A-26(2)(C) to make findings on

25

the Project's consistency with the community plan.  PPKAA, mem.
op. at 22.  Under HRS § 205A-26(2)(C):

> (2) No development shall be approved unless the authority
> has first found:
>
> . . .
>
> (C) That the development is consistent with the county
> general plan and zoning.  Such a finding of consistency
> does not preclude concurrent processing where a general
> plan or zoning amendment may also be required.

(Emphasis added.)

We agree with the ICA that Resolution 14-14 did not exempt
the Project from HRS § 205A-26(2)(C) and that the Commission was
required to find that the Project was consistent with the West
Maui Community Plan.  While HRS § 201H-38(a) states that
qualified housing projects "shall be exempt" from statutes and
ordinances related to the development and improvement of land,
these exemptions are contingent on the legislative body of the
county, in this case, the Council, approving the proposed
project "with or without modifications[.]"  In this case,
Resolution 14-14 provided that the Project "shall comply with
all statutes, ordinances, charter provisions, and rules of
governmental agencies relating to planning, zoning and
construction standards for subdivisions, development and
improvement of land, and the construction of dwelling units

thereon," <u>except</u> for the attached specified exemptions.[15]
(Emphasis added.)  Resolution 14-14 exempted the Project from
MCC ch. 2.80B, but it did not exempt the Project from HRS
§ 205A-26(2)(C).

However, even if Resolution 14-14 had included HRS § 205A-26(2)
among its listed exemptions, the Council would not have been
able to exempt the Project from HRS § 205A-26(2)'s requirements.
Although Carr argues that HRS § 205A-26(2)(C) is a law "relating
to the development and improvement of land" that may be exempted
under HRS § 201H-38, HRS ch. 201H does not define "relating to"
or provide guidance as to how broadly or narrowly to read that
phrase.  The United States Supreme Court has recognized that the
words "relating to" are "broad and indeterminate," and "extended
to the furthest stretch of their indeterminacy, stop nowhere."
<u>Mellouli v. Lynch</u>, 575 U.S. 798, 811-12 (2015) (cleaned up).
"Context, therefore, may tug in favor of a narrower reading."
Mellouli, 575 U.S. at 812. (cleaned up).

HRS ch. 205A is, viewed as a whole, an <u>environmental</u> law.
See HRS § 205A-21 (declaring that it is the state's policy to
"preserve, protect, and where possible, to restore the natural

---

[15]     Carr acknowledges that HRS § 201H-38(a)'s use of the word "shall" is
qualified by subsections (1) through (4).  HRS § 201H-38(a)(3) requires the
legislative body of the county in which the housing project is proposed to
approve the project "with or without modifications."  Carr also acknowledges
that Resolution 14-14 provided that the Project "shall comply" with all
statutes not specifically exempted.

27

resources of the coastal zone of Hawai[']i."); Morgan v. Planning Dept., Cty. of Kauai, 104 Hawai'i 173, 181, 86 P.3d 982, 990 (2004) ("The CZMA is a comprehensive State regulatory scheme to protect the environment and resources of our shoreline areas.") (emphasis added). While "managing development" is also one of the CZMA's objectives, HRS § 205A-2 describes this objective as "[i]mprov[ing] the development review process, communication, and public participation in the management of coastal resources and hazards." To the extent the CZMA affects development, it is "in order to preserve, protect, and, where possible, restore the natural resources of Hawai'i's coastal zone," not to "improve" the land. Morgan, 104 Hawai'i at 182, 86 P.3d at 991. We therefore do not construe HRS ch. 205A as a law "relating to" the development and improvement of land for the purposes of exemptions under 201H-38.

Therefore, the Commission was required under HRS § 205A-26(2)(C) to make findings on the Project's consistency with the West Maui Community Plan.

## V. Conclusion

We therefore affirm the ICA's October 13, 2020 judgment vacating the circuit court's June 19, 2015 findings of fact, conclusions of law, and order denying appeal and final judgment, and we remand to the Commission for further proceedings consistent with this opinion.

28

Lance D. Collins,
for PPKAA

Arisma A. Muller and
Craig G. Nakamura,
for the Commission

Moana M. Lutey,
Thomas W. Kolbe, and
Caleb P. Rowe,
for Carr

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Michael D. Wilson

/s/ Todd W. Eddins

