**Electronically Filed
Supreme Court
SCWC-16-0000667
05-APR-2022
08:17 AM
Dkt. 50 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

---

ALEXANDER & BALDWIN, LLC, a Hawaiʻi limited liability company,
Respondent/Plaintiff-Appellee,

vs.

NELSON ARMITAGE, SR.,
Petitioner/Defendant-Appellant,

and

WAYNE ARMITAGE; FREDERICK TORRES-PESTANA, also known as RIKI
TORRES-PESTANA; and KINGDOM OF HAWAIʻI, also known as REINSTATED
LAWFUL HAWAIIAN GOVERNMENT, also known as LAWFUL HAWAIIAN
GOVERNMENT, also known as REINSTATED HAWAIIAN GOVERNMENT, also
known as REINSTATED HAWAIIAN NATION, also known as REINSTATED
HAWAIIAN KINGDOM, an unincorporated association,
Respondents/Defendants-Appellants,

and

ROBERT ARMITAGE, also known as BOBBY ARMITAGE; JAMES AKAHI, also
known as AKAHI NUI, also known as MAJESTY AKAHI NUI, also known
as JAMES AKAHI NUI, also known as ROYAL MAJESTY AKAHI NUI,
Executor/Trustee of the Kingdom of Hawaiʻi Nation Ministry Trust;
and KINGDOM OF HAWAIʻI NATION MINISTRY TRUST, also known as
KINGDOM OF HAWAIʻI, an unincorporated association,
Respondents/Defendants-Appellees.

---

SCWC-16-0000667

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000667; CIV. NO. 13-1-1065)

APRIL 5, 2022

RECKTENWALD, C.J., NAKAYAMA, McKENNA, WILSON, AND EDDINS, JJ.

OPINION OF THE COURT BY RECKTENWALD, C.J.

## I.   INTRODUCTION

Beginning in 2011, Nelson Armitage (Armitage) and a group of others that included Robert Armitage, Wayne Armitage, and Frederick Torres-Pestana (collectively, individual defendants) entered onto and occupied land belonging to Alexander & Baldwin, LLC (A&B) in Maui.  They purported to act on behalf of an organization called the Reinstated Hawaiian Nation.  A&B sued seeking a writ of ejectment, damages, and preliminary and permanent injunctions barring them from entering any property owned by A&B.  In addition to the individual defendants, A&B also sued the Reinstated Hawaiian Nation by various names.

Throughout the proceedings, Armitage, and Henry Noa, who was not a party, defended the Reinstated Hawaiian Nation as foreign minister and prime minister, respectively.  In short, they acted as lawyers would in representing the interests of the Reinstated Hawaiian Nation.  The circuit court granted summary judgment to A&B and entered the requested injunction.  The

2

defendants appealed, with Armitage and Noa again purporting to represent the Reinstated Hawaiian Nation.

The Intermediate Court of Appeals (ICA) dismissed the appeal as to the Reinstated Hawaiian Nation, reasoning that, as non-attorneys, Armitage and Noa could not represent its interest before that court. However, the ICA addressed Armitage's appeal individually and rejected each of his substantive points of error. Armitage sought review before this court. Although he abandons his substantive points of error, he asserts that if the ICA was correct that his representation of the Reinstated Hawaiian Nation was improper and merited dismissal of the appeal, then, for the same reason, the circuit court's judgment must be vacated as to the Reinstated Hawaiian Nation.

We agree. In doing so, we reject a rule that would automatically render a nullity any judgment obtained as a result of the improper participation of a non-attorney representative, but nevertheless hold that the judgment against the Reinstated Hawaiian Nation must be voided. The public policy behind the prohibition on the unauthorized practice of law requires us to vacate the circuit court's judgment as to the Reinstated Hawaiian Nation. However, we do not vacate the judgment against Armitage or any other defendant.

## II.   BACKGROUND

### A.   Circuit Court Proceedings

On November 26, 2013, A&B filed a complaint for preliminary and permanent injunctions in the circuit court against Armitage and his codefendants for entering and occupying land owned by A&B in Maui.  In addition to the individual defendants, A&B named the Reinstated Hawaiian Nation in its complaint.[1]  A&B sought damages and an order of ejectment along with preliminary and permanent injunctions against Armitage and

---

[1]     The complaint named the Reinstated Hawaiian Nation as "KINGDOM OF HAWAI'I, also known as REINSTATED LAWFUL HAWAIIAN GOVERNMENT, also known as LAWFUL HAWAIIAN GOVERNMENT, also known as REINSTATED HAWAIIAN GOVERNMENT, also known as REINSTATED HAWAIIAN NATION, also known as REINSTATED HAWAIIAN KINGDOM, an unincorporated association."  The organization filed a motion to dismiss the complaint, identifying itself as "Reinstated Hawaiian Government."  However, in its opening brief before the ICA, it identified itself as the Reinstated Hawaiian Nation, and the ICA addressed it as such. See Alexander & Baldwin, LLC v. Armitage, 146 Hawai'i 232, 459 P.3d 791, 2020 WL 1227517, at *1 (App. Mar. 12, 2020).  For clarity, we use the same terminology as the ICA and the opening brief.
According to the appellants' opening brief, the Reinstated Hawaiian Nation was established on March 13, 1999:

> [F]ollowing the failure of the State of Hawaii to accomplish the intent of Act 359 (1993), loyalists to Queen Lili[' ]uokalani and citizens of the Kingdom of Hawaii, . . . exercised their "perfect right" . . . to re-instate their inherent and LAWFUL Hawaiian Government, which had been suspended in an ACT OF WAR, by the ARMED FORCE of the UNITED STATES OF AMERICA, on January 17, 1893.
>    Therefore, the Lawful [Reinstated] Hawaiian Government [], that has been in existence since March 13, 1999, nearly 17 years and recently completed their 41st Manakau Kanawai (The convening of the Legislature), is the lawfully created native Hawaiian Government of native Hawaiians, as it is a self-determining government of their own choosing, pursuant to International Law, U.S. Law, and even Hawaii Law pursuant to Act 359 of 1993.

his codefendants enjoining them from entering the land as well as all other property owned by A&B.

According to A&B's first amended complaint, Armitage and his codefendants entered and occupied three parcels belonging to A&B beginning in 2011. They put up the Hawaiian flag and signs declaring the land to be under the jurisdiction of the lawful Hawaiian government and began constructing an ahu, a traditional stone land marker or cairn. They also cleared land and conducted unpermitted commercial activities that resulted in citations against A&B. During the trespass, Armitage represented himself to A&B as the "Minister of Foreign Affairs of the Hawaiian Kingdom" and claimed ownership of the land by virtue of a kingdom registry.

Throughout the proceedings that followed, Armitage and Noa participated extensively as representatives of the Reinstated Hawaiian Nation. While Armitage sometimes identified himself in filings only as "NELSON ARMITAGE, Pro Se," he signed other filings as foreign minister of the Reinstated Hawaiian Nation. Noa was not a defendant, although he was sometimes referred to as a defendant pro se and sometimes represented himself as such. Both filed motions and responded to A&B's motions. For example, Noa filed a motion to dismiss A&B's complaint signed only by him, above the signature line,

"REINSTATED HAWAIIAN GOVERNMENT[,] By its Prime Minister, Henry Noa." Armitage and Noa filed witness lists and made objections to evidence, conducted voir dire for expert witnesses and cross-examined both expert and fact witnesses during the preliminary injunction hearing and rehearing, and made oral and written arguments.[2] None of the presiding judges barred Noa and Armitage, as non-attorneys, from representing the Reinstated Hawaiian Nation.

At several points throughout the proceedings, Noa's status as a non-party – and Armitage's capacity as a representative of the Reinstated Hawaiian Nation - became evident. On January 15, 2014, the circuit court held a hearing on A&B's motion for a preliminary injunction. Noa initially appeared alone and identified himself as a representative of the Reinstated Hawaiian Nation. Later, he objected to a default that had been entered against Armitage. The court appeared to treat Noa as a defendant pro se:

> THE COURT: Okay. There's just no default against you.
> MR. NOA: Even against the other parties.

---

[2] Three different judges presided over the case. Originally, the Honorable Peter T. Cahill presided; however, he recused himself on June 10, 2014. The case was reassigned to the Honorable Rhonda I.L. Loo, but she recused herself on September 2, 2014. The case was then reassigned to the Honorable Joseph E. Cardoza, who presided over the remainder of the proceedings.

> THE COURT:  <u>Well, the other parties have to speak for</u>
> <u>themselves.  I'm not saying I won't vacate it, but they've</u>
> <u>got to speak for themselves.</u>

(Emphasis added.)[3]

Armitage arrived shortly thereafter, and the court vacated the default against him.

Five days later, on January 29, 2014, the court reconvened on the preliminary injunction, and Noa and Armitage again introduced themselves as representatives of the Reinstated Hawaiian Nation.  During the hearing, Noa introduced a "staff member working with my office, prime minister's office" whom he said he had "assigned . . . to speak on my behalf."  The court responded:

> THE COURT:  Is he an attorney?
> MR. NOA:  No, he is not.
> THE COURT:  Then he can't speak for you.  You don't need anybody to speak for you.
> MR. NOA:  No, your Honor. . . .  We are here performing pro se.  We're doing our best, but at times, our best just seems to run into these difficulties. . . . I -- you know, I asked him to advise – be my advisor.
> THE COURT:  And he can do that.
> MR. NOA:  Okay.  Fantastic.
> THE COURT:  But he can't speak for you in court.  And, in fact, his even sitting on that side of the bench is normally not allowed, but I'll let you do it because you wanted him to advise you, he can advise you, but he's not an attorney.

---

[3]    Later in the same hearing, Noa addressed the court, "Your Honor, I'm here under pro se.  I don't have the luxury of having A&B's great lawyers behind them."  The court responded, in part, "I know," before changing subjects.

Next, on November 19, 2014, Judge Cardoza presiding,[4] the circuit court addressed the issue of whether Noa could represent the interests of others before the court. Noa had filed a motion to strike entries of default against defendants Akahi Nui and the Kingdom of Hawai'i Nation Ministry Trust (an organization distinct from the Reinstated Hawaiian Nation) as well as Torres-Pestana. The court questioned Noa: "Now, you're essentially putting yourself in a position of representing someone other than yourself?" The court pointed out that neither Noa nor Armitage were in default. Regarding Torres-Pestana's default, the court ruled:

> THE COURT: I'll tell you what. If he wants to present something to the Court, he can do that by way of motion.
> MR. NOA: At least we know so we can contact him and let him know. I don't think the order does include his name, your Honor. I think it's very clear that it's -- you know, if you look at the order.
> THE COURT: That -- the motion does indicate that you're acting as a representative of the Reinstated Hawaiian Kingdom Nation, and that does present some issues relative to your representation of a -- of another entity.
> And, respectfully, although that's your contention, I think you're going to need to consider whether you're able to serve as a legal representative of the Reinstated Hawaiian Kingdom Nation.
> I don't have any problem with you appearing here and acting on your behalf to oppose A&B's request. But, at least based on the record that I have before me, as I've mentioned, number one, you're not in default, and then the other thing that I raised earlier was a concern that I would have if you're representing yourself as a legal representative.
> MR. NOA: No. I'm not trying to do that, your Honor.

---

[4] After Judges Cahill and Loo recused, Judge Cardoza ordered that A&B would have to present anew its evidence establishing that it was entitled to injunctive relief.

> THE COURT: All right. Then I will -- based on all of that, I'm going to deny the motion. That doesn't prevent anyone from coming in here and if they're in default and asking the Court for some relief, but that's not what's before me today.

(Emphasis added.)

Lastly, on July 15, 2015, the court held a hearing on A&B's motion for summary judgment. After the parties made their arguments, the court addressed Noa regarding his personal claim to the contested parcels.[5] During this discussion, Noa acknowledged to the court that he was not a named defendant:

> THE COURT: So, Mr. Noa, your -- your -- in part you seem to be arguing, or I guess collectively you folks seem to be arguing on behalf of the reinstated Hawaiian government that the property was conveyed to Victoria Kamamalu and that you're descendants of that individual. Are you arguing that?
> MR. NOA: Your Honor, I'd like to just state that we -- we didn't enter the court case as the reinstated Hawaiian nation. It was Alexander & Baldwin that actually provided that to the Court, okay. And because the party, the party was made, of which I am a part. I am a part of the reinstated Hawaiian nation, lawful Hawaiian government, that I appeared representing that government. Okay.
> So kind of not sure as to the question that you are directing at me, other than to say that, yes, that I have been representing the lawful Hawaiian government in this issue and we are not -- as the government, we have not made a claim to the property at all. I haven't, as the

_____

[5] Noa filed a counterclaim on November 10, 2014 identifying himself as a defendant and claiming loss of income and revenue in the amount of $100 million as an heir of Victoria Kamamalu, the rightful claimant to the land. In response to his counterclaim, A&B argued: "While Henry Noa has appeared in this action as the representative Defendant Reinstated Hawaiian Government, he was not named individually, and has never received Court approval to appear and file claims in his individual capacity." At the hearing on A&B's motion, the court acknowledged that Noa was not a named defendant and orally dismissed the complaint: "Mr. Henry Noa actually is not a named party in this case, but he has appeared and represented — or appeared individually and in the capacity that he's noted, as prime minister of the [Reinstated Hawaiian Nation]."

> government, okay.  <u>So I've just been representing the
> government since they named us as a party.</u>
>         . . .
>         <u>So, I was never -- I was never named in as a
> defendant, other than representing the lawful Hawaiian
> government, your Honor.</u>

(Emphasis added.)

Throughout the proceedings, A&B argued that it held title to the contested parcels deriving from Royal Patent Grant (RPG) 165, granted by King Kamehameha III to M. Kekuanaoa, father and guardian of Kamamalu, on November 20, 1848.  It adduced expert testimony and introduced exhibits to this effect, and it called its managers and other personnel to testify to the trespassing incidents.

Although they challenged A&B's arguments and evidence, Noa and Armitage presented no evidence.  After A&B rested in the evidentiary hearings for a preliminary injunction, Armitage and Noa requested additional time to prepare and present evidence.  But when the court reconvened on October 27, 2014, Armitage, Noa, and Wayne Armitage rested without calling any witnesses or presenting evidence.

However, in their cross-examination and arguments, Noa and Armitage challenged A&B's chain of title through RPG 165.  In particular, they sought to establish that A&B could not

produce an original deed of title to RPG 165.[6]  They also challenged an April 24, 1850 conveyance of the land described by RPG 165 to Richard Armstrong by Kekuanaoa, arguing that Kekuanaoa could not transfer a fee simple title as, under the Hawaiian translation of the deed, Kekuanaoa held only a life estate, the remainder being reserved to Kamamalu.  And, at closing arguments, Noa argued that by failing to produce the original RPG, A&B was attempting to perpetuate a fraud on the court.  Armitage added that the State lacked jurisdiction in this matter as its authority had been illegitimately substituted for that of the Hawaiian monarchy.

The circuit court granted summary judgment to A&B and entered a permanent injunction against Armitage and his codefendants, naming Noa as "Pro Se representative" of the Reinstated Hawaiian Nation.  It entered an amended final judgment on September 16, 2016.[7]

---

[6]    Instead, A&B introduced into evidence a certified copy of RPG 165, conveying the subject parcels to Kekuanaoa.

[7]    The circuit court entered final judgment on November 2, 2015, and Armitage and Noa filed a pro se notice of appeal.  However, the ICA dismissed the appeal for lack of appellate jurisdiction, noting that although the November 2 judgment held that there were "no remaining claims" it did not "specifically identify[] the claim or claims on which the circuit court intend[ed] to enter judgment."

In dismissing the appeal, the ICA noted that Noa did not intervene as a defendant, but rather claimed to represent the Reinstated Hawaiian Nation.  It noted that Hawai'i law prohibits non-attorneys from representing other persons or entities before the circuit court.  And it suggested that, although the judgment named Noa, as a nonparty he would not

(continued...)

11

**B.    ICA Proceedings**

Armitage, Noa, Wayne Armitage, and Torres-Pestana filed a pro se notice of appeal from the amended final judgment. Armitage signed as "Foreign Minister, Defendant, Pro Se"; Noa as "Prime Minister[,] Defendant, Representing Reinstated Hawaiian Nation."  The opening brief raised six points of error relating to the proceedings below and A&B's claim to the parcels,[8] and was signed by Armitage on his own behalf and by Noa and Armitage as prime minister and foreign minister of the Reinstated Hawaiian Nation, respectively.

After the defendants filed their opening brief, A&B moved to dismiss the appeal or strike the brief as to the Reinstated Hawaiian Nation on the basis that the brief was filed by non-attorneys Noa and Armitage.  In its memorandum in

_____

(...continued)
be bound by it.  See Alexander & Baldwin, LLC v. Armitage, No. CAAP-15-0000890, 2016 WL 3349070, at *1 n.1 (App. June 14, 2016) (citing Oahu Plumbing & Sheet Metal, Ltd. v. Kona Constr. Inc., 60 Haw. 372, 377, 590 P.2d 570, 574 (1979)).

[8]     Those points of error were: (1) Judge Loo erred when she failed to certify familiarity with the underlying action pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 63 (2000) and held a hearing despite having a conflict of interest in the matter; (2) Judge Loo abused her discretion when she granted A&B's ex parte motion for a temporary restraining order (TRO) after having recused herself; (3) Judge Loo erred by granting the TRO despite having a conflict of interest in the matter; (4) Judge Cardoza erred when he failed to certify familiarity with the underlying action pursuant to HRCP Rule 63 prior to accepting the case; (5) Judge Cardoza abused his discretion when he prevented Armitage from challenging the validity of A&B's evidence regarding ownership of the contested parcels; and (6) Judge Cardoza erred in granting A&B's motion for summary judgment because A&B failed to show it had clear and unbroken title to the contested parcels.

support, A&B argued that Noa "is not a named party to this action," and as non-lawyers, neither Noa nor any of the defendants could represent the Reinstated Hawaiian Nation. A&B contended that representation of a corporation by a non-lawyer constitutes the unauthorized practice of law, citing Oahu Plumbing & Sheet Metal, Ltd. v. Kona Construction, Inc., 60 Haw. 372, 590 P.2d 570 (1979). A&B noted that a court has inherent power to sua sponte "prevent an unauthorized person from practicing law in a case pending before it," and opposing parties have standing to challenge such an appearance. (Quoting Tradewinds Hotel v. Cochran, 8 Haw. App. 256, 264, 799 P.2d 60, 65 (1990)). Noa and Armitage filed a memorandum in opposition objecting to the motion without argument, as prime minister and foreign affairs minister/defendant pro se, respectively. The ICA denied the motion "without prejudice to the merit panel's consideration when reviewing the appeal on the merits." A&B renewed its arguments for dismissal in its answering brief. Armitage and Noa filed a reply brief in the same capacities as in the opening brief, but did not address the issue of their representation of the Reinstated Hawaiian Nation.

In a summary disposition order, the ICA affirmed the circuit court's September 16, 2016 amended final judgment.

As a preliminary matter, the ICA held that under Hawai'i Revised Statutes (HRS) §§ 605-2 (2016)[9] and 605-14 (2016)[10], Noa and Armitage could not represent the Reinstated Hawaiian Nation.  Therefore, the Reinstated Hawaiian Nation was not a party to the appeal:

> Under HRS § 605-2 (2016) and § 605-14 (2016), persons who are not licensed to practice law in Hawai'i "are not permitted to act as 'attorneys' and represent other natural persons in their causes." Oahu Plumbing & Sheet Metal, Ltd. v. Kona Constr., Inc., 60 Haw. 372, 377, 590 P.2d 570, 573 (1979) (emphasis in original). "By the same token, non-attorney agents are not allowed to represent corporations in litigation, for a wholly unintended exception to the rules against unauthorized practice of law would otherwise result." Id. at 377, 590 P.2d at 574.  The same rules apply to unincorporated entities, such as Reinstated Hawaiian Nation. See Free Church of Tonqa-Kona v. Ekalesia Ho'ole Pope O Kekaha, No. CAAP-19-0000005, 2019 WL 2285359, at \*2 (Haw. App. May 28, 2019) (SDO). Therefore, neither Nelson Armitage nor Henry Noa was entitled to assert an appeal on behalf of Reinstated

---

[9]     HRS § 605-2 provides:

Except as provided by the rules of court, no person shall be allowed to practice in any court of the State unless that person has been duly licensed so to do by the supreme court; provided that nothing in this chapter shall prevent any person, plaintiff, defendant, or accused, from appearing in person before any court, and there prosecuting or defending that person's, plaintiff's, defendant's, or accused's own cause, without the aid of legal counsel; provided further that in the district courts sections 605-13 and 633-28 shall apply.

[10]     HRS § 605-14 provides in relevant part:

It shall be unlawful for any person, firm, association, or corporation to engage in or attempt to engage in or to offer to engage in the practice of law, or to do or attempt to do or offer to do any act constituting the practice of law, except and to the extent that the person, firm, or association is licensed or authorized so to do by an appropriate court, agency, or office or by a statute of the State or of the United States.

> Hawaiian Nation. Accordingly, the notice of appeal is not
> valid with respect to Reinstated Hawaiian Nation, and
> Reinstated Hawaiian Nation is not a party to this appeal.

Alexander & Baldwin, LLC v. Armitage, 146 Hawai'i 232, 459 P.3d
791, 2020 WL 1227517, at *1 (App. Mar. 12, 2020).

Moreover, the ICA noted that, although purportedly
filed on their behalf, the opening brief was not signed by Wayne
Armitage, Robert Armitage, or Torres-Pestana. Id. at *2.
Therefore, it reasoned that Armitage was the only appellant.
Id. As to the six substantive points of error on appeal, the
ICA rejected each of Armitage's arguments and affirmed the
September 16, 2016 amended final judgment of the circuit court.
Id. at *2-*8.

C. Supreme Court Proceedings

Armitage filed an application for writ of certiorari.
Armitage asserts only two questions in his application: "Whether
the circuit court committed reversible error by permitting
Petitioner and Petitioner's codefendants to represent the
[Reinstated] Hawaiian [Nation], and whether failure of the judge
to remedy this error denied Petitioner his due process rights to
a fair hearing?" He does not challenge the ICA's ruling on the
six points of error presented in the opening brief.

Armitage argues that the ICA's decision "implicitly
voids the judgment" of the circuit court: if it was correct that
Armitage and Noa's representation of the Reinstated Hawaiian

15

Nation rendered its appeal a nullity, then so too must the judgment below be voided. "The judiciary may not apply one set of rules in circuit court and another set of rules at the appellate level[.]"

Armitage also asserts that his individual due process rights are implicated by the ICA's holding because he "rel[ied] on the circuit court's implicit ruling that the [Reinstated] Hawaiian [Nation]'s appearance and defense was valid." Armitage asserts that all relevant actors, including three circuit court judges, recognized him as a representative of the Reinstated Hawaiian Nation. He claims that his defense "would have been entirely different had he been sued alone, without the [Reinstated] Hawaiian [Nation] as a codefendant." Finally, noting that his hearing was inextricable with the Reinstated Hawaiian Nation's, he argues that if this court vacates the judgment against the Reinstated Hawaiian Nation, the court must also vacate the judgment against him and all other named codefendants.

In response, A&B argues the ICA properly held that Armitage could not represent the Reinstated Hawaiian Nation. As a result, A&B argues, the Reinstated Hawaiian Nation was correctly not considered a party to the appeal before the ICA.

A&B also asserts that Armitage was not denied due process. A&B cites Sandy Beach Defense Fund v. City Council of Honolulu, 70 Haw. 361, 378, 773 P.2d 250, 261 (1989) for the proposition that "[t]he basic elements of procedural due process of law require notice and an opportunity to be heard at a meaningful time and in a meaningful manner before governmental deprivation of a significant property interest." A&B points out that Armitage and his codefendants were given an opportunity to cross-examine witnesses, present evidence and arguments, question and call their own witnesses, and file closing briefs. A&B notes that when it was Armitage's turn to present evidence on September 19, 2014, he requested a continuance but never called any witness or presented any evidence.

### III. STANDARDS OF REVIEW

#### A. Pro Se Litigants

"Pleadings prepared by pro se litigants should be interpreted liberally." Dupree v. Hiraga, 121 Hawaiʻi 297, 314, 219 P.3d 1084, 1101 (2009). "The underpinnings of this tenet rest on the promotion of equal access to justice — a pro se litigant should not be prevented from proceeding on a pleading or letter to an agency if a reasonable, liberal construction of the document would permit him or her to do so." Waltrip v. TS Enters., Inc., 140 Hawaiʻi 226, 239, 398 P.3d 815, 828 (2016).

17

**B.    Constitutional Law**

"We answer questions of constitutional law by exercising our own independent constitutional judgment based on the facts of the case.  Thus, we review questions of constitutional law under the right/wrong standard."  Onaka v. Onaka, 112 Hawai'i 374, 378, 146 P.3d 89, 93 (2006) (quoting State v. Friedman, 93 Hawai'i 63, 67, 996 P.2d 268, 272 (2000)).

## IV.    DISCUSSION

**A.    As Non-Attorneys, Noa and Armitage Were Not Authorized to Represent the Reinstated Hawaiian Nation**

As an unincorporated entity, the Reinstated Hawaiian Nation may only appear in court through an attorney representative.  Noa and Armitage, as non-attorneys, should not have been allowed to represent its interests before the circuit court.  The circuit court should have sua sponte exercised its power to prevent the unauthorized practice of law by preventing Noa and Armitage from representing the Reinstated Hawaiian Nation.

Under HRS § 605-2, with exceptions not relevant here, no person may practice in any court of this state unless licensed to do so by the supreme court.  Indeed, the unauthorized practice of law is a misdemeanor.  HRS §§ 605-14, 605-17 (2016); see also HRS § 605-15.2 (2016) (providing

18

injunctive, declaratory, and criminal remedies for the unauthorized practice of law).

The rule against non-attorney representation applies to lay representation of corporations. "The prevailing rule is that a corporation cannot appear and represent itself either in proper person or by its officers, but can do so only by an attorney admitted to practice law." Oahu Plumbing, 60 Haw. at 374, 590 P.2d at 572; see also Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 201–02, (1993) ("It has been the law for the better part of two centuries, for example, that a corporation may appear in the federal courts only through licensed counsel.").

This rule arises out of the necessity of having a single person represent a corporation's interests. Oahu Plumbing, 60 Haw. at 376, 590 P.2d at 573. Corporations are "hydra-headed entit[ies]" whose shareholders are immune from liability, thus requiring "a designated spokesman accountable to the Court." Id. at 377-78, 590 P.2d at 574 (citation omitted); see also Downtown Disposal Servs., Inc. v. City of Chicago, 979 N.E.2d 50, 54 (Ill. 2012) ("It is not every case where the views or interests of a principal and the corporation mesh. By requiring an attorney to represent a corporation in legal proceedings, this problem is mitigated.").

19

The same rationale applies with equal force to unincorporated entities.  See Rowland, 506 U.S. at 202 ("[T]he rationale for that rule applies equally to all artificial entities.").  As we held in Oahu Plumbing, non-attorney agents may not represent corporations in litigation because "a wholly unintended exception to the rules against unauthorized practice of law would otherwise result." 60 Haw. at 377, 590 P.2d at 574.  Likewise, a "wholly unintended exception" would arise if non-attorneys could represent unincorporated associations, but not corporations or natural persons, in court.  In addition, the weight of authority from other jurisdictions holds that non-attorneys are barred from representing any organization in court, not just corporations.  See, e.g., Church of the New Testament v. United States, 783 F.2d 771, 773 (9th Cir. 1986); State ex rel. Stephan v. Williams, 793 P.2d 234, 241-42 (Kan. 1990); State v. Settle, 523 A.2d 124, 129 (N.H. 1987).[11]

---

[11]    In this case, the ICA relied on Free Church of Tonga-Kona, 2019 WL 2285359, at *2, which held that to the extent "an unincorporated entity consisting of multiple members" would fit the definition of a "nonprofit association" under HRS § 429-1 (2004), it may not appear in court through a non-attorney agent.  Armitage, 2020 WL 1227517, at *1.  HRS § 429-1 defines a nonprofit association as "an unincorporated organization, other than one created by a trust, consisting of two or more members joined by mutual consent for a common, nonprofit purpose."

However, the bar on non-attorney representation of unincorporated entities does not turn on their statutory classification.  Whatever its statutory status, an unincorporated entity with multiple constituents may not be represented by a non-attorney agent in court.  See Settle, 523 A.2d at 129 (holding that even though under New Hampshire law, an association may be viewed as "merely a group of individuals voluntarily joined together to

(continued...)

20

Here, it is undisputed that Noa and Armitage were engaged in the practice of law as representatives of the Reinstated Hawaiian Nation.  Under Hawai'i law, Noa and Armitage were not authorized to represent its interests in court.

Because Noa and Armitage, as non-lawyers, were not authorized to represent the Reinstated Hawaiian Nation in court, the circuit court should have exercised its inherent power to prevent their unauthorized practice of law.  "Our courts have inherent and statutory powers to deal with the unauthorized practice of law. . . .  Under those powers, our courts, sua sponte, may prevent an unauthorized person from practicing law in a case pending before [them]."  Tradewinds Hotel, 8 Haw. App. at 263-64, 799 P.2d at 65 (citations omitted).  Courts have an active role in enforcing HRS §§ 605-2 and 605-14.  Thus, they not only may but should act sua sponte to prevent non-attorneys from practicing law before them.

In particular, when confronted with an attempt by a layperson to represent an entity, the court should continue the proceedings to allow the entity to obtain counsel; if the entity fails to do so within a reasonable period, the court should enter a default or take other remedial action.  See Shasteen,

---

(...continued)
further a common purpose" or "a collection of individuals," it may not be represented by a non-attorney agent in court).

Inc. v. Hilton Hawaiian Vill. Joint Venture, 79 Hawai'i 103, 109, 899 P.2d 386, 392 (1995) ("[A] corporation should be allowed an opportunity to secure counsel before permitting an entry of default against the corporation or, as in this case, dismissing the action[.]").

This was substantially the course of action that the district court took in Oahu Plumbing.  In that case, default was entered against a corporation, Kona Construction, Inc., after which its non-attorney officer, Walters, appeared before the court and moved to set aside the default.

> The court below then informed Walters that it was initially inclined to withhold action on the motion if an attorney was obtained to represent Kona Construction.  After continued discourse, Walters informed the court that Kona Construction did not intend to find an attorney to represent it.  The court thereafter ruled that since, in its opinion, corporations could not be represented by their non-attorney officers, and in view of the fact that Kona Construction did not intend to obtain an attorney, the motion could not be granted and that Kona Construction would remain in default.

60 Haw. at 374, 590 P.2d at 572.

We affirmed, holding, "Without an attorney, Kona Construction was precluded from further participation in the proceedings, and the court below acted properly in allowing the entry of default to stand."  Id. at 380, 590 P.2d at 576.  Likewise, here, the court should have provided the Reinstated Hawaiian Nation with an opportunity to obtain an attorney.  If it failed to do so, an entry of default would have been

22

appropriate.  Cf. KSNG Architects, Inc. v. Beasley, 109 S.W.3d

894, 899 (Tex. App. 2003) ("The trial court abused its

discretion in striking [the defendant's] answer without giving

it the opportunity to hire counsel and replead.").  In either

case, the court should not have let Noa and Armitage continue to

represent the Reinstated Hawaiian Nation.[12]

**B.   Although We Reject the Nullity Rule, Public Policy and the
       Pervasiveness of the Representation Here Require Vacatur**

Because we conclude that Armitage and Noa should not

have been allowed to represent the Reinstated Hawaiian Nation,

we must decide what effect, if any, their unauthorized

representation has on the judgment rendered against the

Reinstated Hawaiian Nation.  This is a question of first

impression before this court.  We hold that although the

participation of a non-attorney representative does not

_____

[12]    We note that to the extent Armitage here seeks to vacate the
judgment against the Reinstated Hawaiian Nation, he is arguably attempting to
represent it on certiorari review.  Although the application is unsigned, the
accompanying certificate of service is signed by Nelson Armitage as "Minister
of Foreign Affairs, Kingdom of Hawai'i."  We nevertheless reach the merits of
the application in the interests of justice, as we did in Oahu Plumbing:

> We recognize that the propriety of Walters' appearance on
> behalf of Kona Construction on this appeal, as well as in
> all proceedings below, may be seriously questioned in view
> of the very issue raised on this appeal.  However, mindful
> of the significance of this issue, we have allowed this
> case to proceed and have examined the record to determine
> the rights of both Kona Construction and Oahu Plumbing.

60 Haw. at 373 n.1, 590 P.2d at 571 n.1. (citations omitted).
       So here, we reach the merits of the Reinstated Hawaiian Nation's
application in order to determine the effect of the judgment against it.

automatically render a resulting judgment null, the

pervasiveness of the representation here requires vacatur.

Jurisdictions generally fall into two groups regarding

the effect of non-attorney representation.  One group – the so-

called "nullity rule" jurisdictions - holds that these actions

automatically result in a nullity.[13]  The other group assesses

the circumstances of the non-attorney's actions to determine

whether they should be rendered null or if they can be

corrected.[14]

---

[13]    See Kelly v. Saint Francis Med. Ctr., 889 N.W.2d 613, 621 (Neb. 2017) ("We regard the unauthorized practice of law as a serious offense, and we therefore favor the approach of those jurisdictions that have found that any unauthorized practice is a nullity."); Naylor Senior Citizens Hous., LP v. Side Constr. Co., 423 S.W.3d 238, 246-47 (Mo. 2014) (en banc) ("[A]ctions constituting the unauthorized practice of law must not be recognized or given effect."); Davenport v. Lee, 72 S.W.3d 85, 93-94 (Ark. 2002) ("In light of our duty to ensure that parties are represented by people knowledgeable and trained in the law, we cannot say that the unauthorized practice of law simply results in an amendable defect."); Jadair Inc. v. U.S. Fire Ins. Co., 562 N.W.2d 401, 411 (Wis. 1997) (holding notice of appeal not signed by an attorney was "fundamentally defective" and could not be saved by amendment); Land Mgmt., Inc. v. Dep't of Env't Prot., 368 A.2d 602, 604 (Me. 1977) ("Since the plaintiff was not represented by counsel licensed to practice law, its complaint was a nullity and was properly dismissed by the [lower court]."); Expressway Assocs. II v. Friendly Ice Cream Corp., 642 A.2d 62, 67 & n.10 (Conn. App. Ct. 1994) (holding that failure of an attorney to sign appeal deprived the court of subject-matter jurisdiction and dismissing the appeal).

[14]    See In re IFC Credit Corp., 663 F.3d 315, 321 (7th Cir. 2011) (holding debtor could relate back to its bankruptcy filing to correct the lack of an attorney signature); Retail Clerks Union Joint Pension Tr. v. Freedom Food Ctr., Inc., 938 F.2d 136, 137 (9th Cir. 1991) ("The fact that a non-attorney represented a party in a judicial proceeding does not render the resulting judgment void per se."); Bisher v. Lehigh Valley Health Network, Inc., 265 A.3d 383, 408-10 (Pa. 2021) (holding that complaint filed by non-attorney parent on behalf of son's estate was not automatically a nullity); Rental Prop. Mgmt. Servs. v. Hatcher, 97 N.E.3d 319, 329 (Mass. 2018) (holding trial judge has discretion to either dismiss a complaint improperly filed by non-attorney or allow amendment); Downtown Disposal, 979 N.E.2d at 57 ("We hold there is no automatic nullity rule.  Instead, the circuit court
(continued...)

Preliminarily, we reject the view of some jurisdictions that the absence of an attorney, where required, is jurisdictional.  See, e.g., <u>Expressway Assocs. II v. Friendly Ice Cream Corp.</u>, 642 A.2d 62, 67 n.10 (Conn. App. Ct. 1994).  HRS § 603-21.5 (Supp. 2017) provides that the "circuit courts shall have jurisdiction, <u>except as otherwise expressly provided by statute</u>, of . . . [c]ivil actions and proceedings."  (Emphasis added.)  Nothing in HRS §§ 605-2 or 605-14 limits that

_____

(...continued)
should consider the circumstances of the case and the facts before it in determining whether dismissal is proper."); <u>H & H Dev., LLC v. Ramlow</u>, 272 P.3d 657, 663 (Mont. 2012) (holding trial court should evaluate circumstances to decide if plaintiff could relate back to original complaint improperly filed without counsel); <u>Save Our Creeks v. City of Brooklyn Park</u>, 699 N.W.2d 307, 311 (Minn. 2005) (holding that "the lack of an attorney's signature is a defect that can be cured"); <u>Moore Energy Res., Inc. v. Pub. Serv. Comm'n</u>, 785 A.2d 300, 305 (D.C. 2001) ("[C]ompelling policy reasons exist for fashioning a rule that permits a corporation to cure its petition for review if it was not initially signed by counsel."); <u>Torrey v. Leesburg Reg'l Med. Ctr.</u>, 769 So. 2d 1040, 1046 (Fla. 2000) ("[A] trial court must allow litigants a reasonable amount of time to amend their complaints with the appearance of authorized counsel.  A dismissal should only be granted if the party fails to timely amend his or her pleading."); <u>Boydston v. Strole Dev. Co.</u>, 969 P.2d 653, 656 (Ariz. 1998) (en banc) ("A corporation cannot appear without a lawyer, but when it does so its action is not automatically a nullity.  A reasonable opportunity should be given to cure the problem." (citation omitted)); <u>A-OK Const. Co. v. Castle Constr. Co.</u>, 594 So. 2d 53, 54 (Ala. 1992) (declining to dismiss corporation's appeal by layperson because judgment was "due to be affirmed on the merits" so dismissal "could lead only to . . . a pointless rebriefing of the case"); <u>Starrett v. Shepard</u>, 606 P.2d 1247, 1253–54 (Wyo. 1980) (where non-attorney "representation was very limited," default against a corporation was not required); <u>Hamilton Livery Leasing, LLC v. State</u>, 58 N.Y.S.3d 624, 628 (N.Y. App. Div. 2017) ("[T]he irregularity of claimant's initial filing was one that the Court of Claims could have disregarded, given counsel's subsequent appearance on behalf of claimant, by granting so much of claimant's motion to amend the claim as added counsel's signature[.]"); <u>First Wholesale Cleaners Inc. v. Donegal Mut. Ins. Co.</u>, 792 A.2d 325, 334 (Md. Ct. Spec. App. 2002) (declining to dismiss appeal filed by non-attorney where corporation subsequently obtained counsel); <u>Peachtree Plastics, Inc. v. Verhine</u>, 528 S.E.2d 837, 837–38 (Ga. Ct. App. 2000) (holding corporation, through attorney, could relate back to answer filed by non-attorney president).

jurisdiction or the jurisdiction of the courts of appeals.

Further, our courts have reached the merits of appeals by non-attorneys as to whether they could represent entities in court.

See Oahu Plumbing, 60 Haw. at 373 n.1, 590 P.2d at 571 n.1;

Tradewinds Hotel, 8 Haw. App. at 259-60, 799 P.2d at 63-64

(considering appeal of non-attorney trustee on the issue of

whether he could represent trust).[15]  It would not be possible

for our courts to hear those cases if the lack of an attorney

representative deprived us of jurisdiction.  Thus, we have

implicitly rejected this view.

Moreover, we do not view the nullity rule as necessary

in every case to promote the policies behind the ban on the

unauthorized practice of law.

This holding requires us to first examine the policies

underlying the proscription against non-attorney representation.

We have reasoned that a corporation must be represented by

counsel because, as an artificial entity, it can only act

through a representative; in turn, that representative must be

an attorney "to protect the courts and to further the efficient

administration of justice."  Oahu Plumbing, 60 Haw. at 376, 590

---

[15]    We note that these cases involved non-attorneys appealing with respect to their ability to represent entities or, as here, the result of that representation; we do not suggest a broader right for laypersons to represent entities on appeal.

P.2d at 573. In addition to protecting the courts, we have noted that the statutes criminalizing unauthorized practice "were intended to protect the public 'against incompetence or improper activity.'" Fought & Co. v. Steel Eng'g & Erection, Inc., 87 Hawai'i 37, 45, 951 P.2d 487, 495 (1998) (quoting S. Stand. Comm. Rep. No. 700, in 1955 Senate Journal, at 661; H. Stand. Comm. Rep. No. 612, in 1955 House Journal, at 782).

Other jurisdictions have similarly held that the ban on non-attorney representation serves

> (1) to protect citizens from injury caused by the ignorance and lack of skill on the part of those who are untrained and inexperienced in the law, (2) to protect the courts in their administration of justice from interference by those who are unlicensed and are not officers of the court, and (3) to prevent the unscrupulous from using the legal system for their own purposes to the harm of the system and those who may unknowingly rely upon them.

Kelly v. Saint Francis Med. Ctr., 889 N.W.2d 613, 619 (Neb. 2017) (quoting Waite v. Carpenter, 496 N.W.2d 1, 6 (Neb. Ct. App. 1992)); see also Ex parte Ghafary, 738 So. 2d 778, 779 (Ala. 1998) (adopting the same rationale).

Thus, corporations and other entities must be represented by an attorney in order to protect both the courts and the public from the unskilled and the unscrupulous. Among the members of the public sought to be protected by the rule are litigants themselves, who may suffer prejudice from "the mistakes of the ignorant and . . . injuries caused by the unscrupulous." Gomes v. Roney, 151 Cal. Rptr. 756, 757 (Cal.

27

Ct. App. 1979). Courts and opposing parties may also be impacted by "confusion aris[ing] because of unintelligible, untimely or inappropriate documents drawn by the layman." Rogers v. Mun. Ct., 243 Cal. Rptr. 530, 532 (Cal. Ct. App. 1988).

For the following reasons, we hold that the nullity approach is not necessary to serve these policy goals.

First, there are other remedies besides nullification that deter the unauthorized practice of law. See Torrey v. Leesburg Reg'l Med. Ctr., 769 So. 2d 1040, 1045 (Fla. 2000) (noting in the context of out-of-state attorneys practicing in Florida without a license that there are "better suited mechanisms available to discourage the unlicensed practice of law" such as injunctive relief and attorney discipline). For example, the attorney general or any bar association may bring a civil action, HRS § 605-15.1 (2016), and those guilty of unauthorized practice of law may incur criminal penalties, HRS § 605-17. Courts also can use their "inherent and statutory powers" to craft appropriate remedies, and opposing parties have standing to request that the court enjoin unauthorized practice. Tradewinds Hotel, 8 Haw. App. at 263-64, 799 P.2d at 65; see also Rental Prop. Mgmt. Servs. v. Hatcher, 97 N.E.3d 319, 329 (Mass. 2018) (holding that although a "court has no discretion

28

to tolerate" unauthorized practice, a "judge does have the discretion . . . to determine the appropriate remedy").

Second, the nullity approach is harsher than necessary to achieve its ends. Rather than punishing the culpable party – the purported representative – it may punish those who were purported to be represented. See Bisher v. Lehigh Valley Health Network, Inc., 265 A.3d 383, 409 (Pa. 2021) (noting that an inadvertent violation by a corporate officer could prejudice thousands of stockholders). "[I]t would be ironic to protect the public from the unauthorized practice of law by adopting a remedy that can end up doing more damage than the infraction itself." Id. at 408-09. Moreover, even under the remedial rule we announce today, any action infected by non-attorney representation might be voided on appeal. Thus, all parties have an incentive to prevent unauthorized practice of law in order to avoid duplicative litigation. In other words, the nullity rule sweeps too broadly.

Lastly, the nullity rule cuts against our policy of affording litigants the opportunity to be heard on the merits whenever possible, which is especially pertinent in pro se cases. See Erum v. Llego, 147 Hawai'i 368, 380-81, 465 P.3d 815, 827-28 (2020). Other courts have cited similar policies as a reason to reject the nullity approach. See Bisher, 265 A.3d at

29

408 ("[Although t]he bright-line rule is attractive . . . our preference for adjudicating cases on the merits countenances against that temptation."); Moore Energy Res., Inc. v. Pub. Serv. Comm'n, 785 A.2d 300, 305 (D.C. 2001) (citing the preference for resolution on the merits as one of several reasons for rejecting the nullity rule).

For all these reasons, we reject the nullity approach. Instead, we find persuasive the logic of the Illinois Supreme Court in Downtown Disposal:

> [B]ecause the consequences of applying the nullity rule to a case can be harsh, it should be invoked only where it fulfills the purposes of protecting both the public and the integrity of the court system from the actions of the unlicensed, and where no other alternative remedy is possible.

979 N.E.2d at 57.

In sum, courts should address the effects of non-attorney representation on a case-by-case basis with an eye toward vindicating the policy aims of HRS §§ 605-2 and 605-14, namely protecting the courts and the public, including the litigants, from the conduct of non-attorneys. In conducting this analysis, courts should consider among other relevant circumstances:

> whether the nonattorney's conduct is done without knowledge that the action was improper, whether the corporation acted diligently in correcting the mistake by obtaining counsel, whether the nonattorney's participation is minimal, and whether the participation results in prejudice to the opposing party.

Id. (adding that a court "may properly dismiss an action where
the nonlawyer's participation on behalf of the corporation is
substantial, or the corporation does not take prompt action to
correct the defect"); see also Save Our Creeks v. City of
Brooklyn Park, 699 N.W.2d 307, 311 (Minn. 2005) (adopting these
factors); H & H Dev., LLC v. Ramlow, 272 P.3d 657, 662 (Mont.
2012) (concurring with Save Our Creeks).

Here, these factors require that the circuit court's
judgment be vacated as to the Reinstated Hawaiian Nation.

First, we find it significant that Armitage and Noa
were apparently unaware that they were not authorized to
represent the Reinstated Hawaiian Nation. Where a violation is
knowing or intentional and the non-attorney party is attempting
to "game the system," they should not be allowed to benefit from
their own wrongful conduct. Rental Prop. Mgmt., 97 N.E.3d at
329; cf. Scandia Down Corp. v. Euroquilt, Inc., 772 F.2d 1423,
1427 (7th Cir. 1985) ("A corporation may not grant itself a
continuance by manipulating things so that it has no counsel.").
That is not the case here. The circuit court acquiesced to the
representation, and A&B did not challenge it until the resulting
judgment was appealed. Under these circumstances, it was
reasonable for Noa and Armitage to believe they were within
their rights to represent the Reinstated Hawaiian Nation.

31

The second factor – whether the non-attorney party acted diligently in obtaining counsel – does not apply to this case. At no relevant point were Noa and Armitage made aware that they were not authorized to represent the Reinstated Hawaiian Nation and given an opportunity to seek counsel.

Third, the non-attorneys' participation here was not minimal, but rather continuous and pervasive. Over the course of a years-long proceeding before multiple circuit court judges, Noa and Armitage were allowed to act as an attorney would on behalf of the Reinstated Hawaiian Nation by filing motions, making arguments, cross-examining witnesses, and challenging evidence.

The final factor weighs in favor of A&B. A&B would indeed be prejudiced by having to relitigate this matter, a case it has already litigated for the better part of a decade. While the prejudice to A&B is substantial, it is outweighed by the other three factors weighing in favor of vacatur.

In addition, the policies behind the prohibition against non-attorney representation support vacatur here. Many of the "harmful consequences of unlicensed law practice are evident here," particularly "confusion aris[ing] because of unintelligible, untimely or inappropriate documents drawn by the layman." Rogers, 243 Cal. Rptr. at 532. Noa and Armitage's

lack of training and accountability to the court resulted in delays, obscure or confusing filings, and the outlay of considerable judicial resources.

The prohibition also seeks to protect the public; in this case, that included the members of the Reinstated Hawaiian Nation. These members were prejudiced when judgment was entered against the organization of which they are a part without it ever having benefited from the assistance of counsel. While we do not judge their likelihood of success, Noa and Armitage sought to make arguments here that would have benefited from the guidance of a trained attorney. There is no doubt that several of the dangers contemplated by HRS §§ 605-2 and 605-14 were present in this case.

In sum, the fact that the representation was apparently unwitting, the pervasiveness of the representation, and the policy goals behind HRS §§ 605-2 and 605-14 require vacatur here.

In light of this conclusion, the ICA erred by dismissing Armitage and Noa's appeal on behalf of the Reinstated Hawaiian Nation without giving them an opportunity to cure the defect by hiring counsel. The ICA had at least two options it could properly have taken. First, it could have addressed the effect of the non-attorney representation on the circuit court's

33

judgment below, as we do here and as the ICA itself did in Tradewinds Hotel, 8 Haw. App. at 260, 799 P.2d at 64 (reaching the merits of a non-attorney's appeal on the issue of whether the court below properly enjoined him from representing a trust). Second, it could have ordered the Reinstated Hawaiian Nation to refile an opening brief signed by counsel, subject to dismissal only if an amended brief was not filed within a reasonable period. See Shasteen, 79 Hawai'i at 109, 899 P.2d at 392; Boydston v. Strole Dev. Co., 969 P.2d 653, 656 (Ariz. 1998) (en banc) (holding that non-attorney who filed appeal on a corporation's behalf should have been given opportunity to cure the defect). However, in light of our policy in favor of hearing cases on the merits wherever possible and our liberal construction of pro se filings, Erum, 147 Hawai'i at 380-81, 465 P.3d at 827-28, the ICA should not have dismissed the appeal without giving the Reinstated Hawaiian Nation a reasonable opportunity to obtain counsel.

For this reason, we vacate the ICA's judgment to the extent that it affirmed the circuit court's judgment against the Reinstated Hawaiian Nation. We further vacate the circuit court's judgment against the Reinstated Hawaiian Nation.

**C.    Armitage's Due Process Rights Were Not Violated**

Armitage also argues that his due process rights were violated because, relying on "the circuit court's implicit ruling" that he could represent the Reinstated Hawaiian Nation, he did not present any personal defenses, but rather focused his arguments on the rights of the Reinstated Hawaiian Nation.  He argues that his "defense strategy would have been entirely different had he been sued alone, without the [Reinstated] Hawaiian [Nation] as a codefendant – i.e., [Armitage's] entire defense was undermined."  In addition, he argues that "this is not a case where the [Reinstated] Hawaiian [Nation], its evidence, and testimony, etc., can be neatly separated and stricken from the record, as [Armitage's] 'hearing' is inextricable from that of the [Reinstated] Hawaiian [Nation]."  Therefore, if the circuit court's judgment is vacated as to the Reinstated Hawaiian Nation, Armitage argues it must also be vacated as to him.

The Hawai'i Constitution provides, "No person shall be deprived of life, liberty or property without due process of law[.]"  Haw. Const. art. I, § 5.  The United States Constitution provides similar protections.  U.S. Const. amend. XIV.  "The basic elements of procedural due process of law require notice and an opportunity to be heard at a meaningful

35

time and in a meaningful manner[.]" Sandy Beach Def. Fund, 70 Haw. at 378, 773 P.2d at 261; see also Mathews v. Eldridge, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965))).

An examination of the record reveals that Armitage was afforded a full opportunity to be heard at a meaningful time and in a meaningful manner. Armitage appeared at the relevant hearings and was given ample opportunities by the circuit court to cross-examine witnesses, present evidence, question and call witnesses, and present arguments orally and in writing. And, as A&B points out, although Armitage was given an opportunity to present evidence after A&B rested in the preliminary injunction proceedings, he instead rested without putting forth any evidence or calling any witnesses. Armitage thus had the opportunity to participate fully in the court proceedings.

Although Armitage contends in his application that he focused his defenses on the Reinstated Hawaiian Nation, the record does not disclose any confusion during the proceedings that Armitage was being sued. For example, at the January 15, 2014 hearing, the court addressed Armitage and asked him if he wanted "to vacate the default that was entered against you."

36

(Emphasis added.)  Armitage consistently identified himself as a defendant pro se in filings.  In at least one instance, he signed a filing twice, once above the title, "REINSTATED HAWAIIAN GOVERNMENT[,] By its Minister, Nelson Armitage," and then again above the title, "NELSON ARMITAGE, Individually," indicating an understanding of his dual role as representative of the Reinstated Hawaiian Nation and a defendant in his own right.  In other words, he was on notice and, based on his conduct, in fact knew that he faced liability for the relief sought.

Additionally, while Armitage points out that he did not raise any "personal defenses to the action," he does not say what defenses he might have raised that would have been applicable to him, but not the Reinstated Hawaiian Nation.  To the contrary, the arguments that he and Noa raised on behalf of the Reinstated Hawaiian Nation amounted to the assertion that A&B did not own the contested land.  This argument applies equally to Armitage and all his codefendants.  In other words, although he generally claims his defense was geared toward the Reinstated Hawaiian Nation, he does not say how it would have been different if he had been aware that he could not represent the Reinstated Hawaiian Nation in court.  As we noted in Sandy Beach Defense Fund, one of the considerations when weighing

37

procedural due process arguments is "the probable value, if any, of additional or alternative procedural safeguards." 70 Haw. at 378, 773 P.2d at 261 (citing Mathews, 424 U.S. at 335). Here, Armitage does not establish that the alternative procedural safeguard of being barred from representing the Reinstated Hawaiian Nation would have served to protect his right to due process of law.

In sum, although Armitage claims his defense was undermined, nothing prevented him from mounting his own arguments, given that the record indicates he understood that he was a defendant in his own right. Thus, Armitage was afforded the "full rights of due process present in a court of law, including presentation of witnesses and cross-examination." Id. at 378, 773 P.2d at 261. Armitage's improper representation of the Reinstated Hawaiian Nation did not render the judgment against him in his individual capacity improper.

Finally, we reject the argument that because we vacate the judgment as to the Reinstated Hawaiian Nation, we must vacate the judgment against Armitage. While the Reinstated Hawaiian Nation was not represented by licensed counsel, as required, Armitage appeared in person and properly represented himself pro se. See HRS § 605-2 (providing that "nothing in this chapter shall prevent any person, plaintiff, defendant, or

accused, from appearing in person before any court, and there prosecuting or defending that person's, plaintiff's, defendant's, or accused's own cause, without the aid of legal counsel"). Armitage's representation of himself did not implicate the same policy concerns as his and Noa's representation of the Reinstated Hawaiian Nation. In short, while Armitage may have shared defenses and evidence with the Reinstated Hawaiian Nation, the error that infected the organization's representation did not infect Armitage's hearing, and we see no reason to vacate the judgment against him individually. Thus, while we vacate the judgment below as to the Reinstated Hawaiian Nation, we affirm the judgment as to all other defendants.

## V. CONCLUSION

For the foregoing reasons, we vacate the ICA's April 14, 2020 judgment on appeal to the extent it affirmed the circuit court's September 16, 2016 amended final judgment as to the Reinstated Hawaiian Nation, and vacate the circuit court's amended final judgment as to the Reinstated Hawaiian Nation. However, we affirm the circuit court's judgment as to Armitage

and all other defendants.  We remand this matter to the circuit

court for further proceedings consistent with this opinion.

Nelson K. Armitage, Sr.       /s/ Mark E. Recktenwald
petitioner pro se

                                  /s/ Paula A. Nakayama

Deborah K. Wright,
Keith D. Kirschbraun,         /s/ Sabrina S. McKenna
and Douglas R. Wright
for respondent                   /s/ Michael D. Wilson

                                  /s/ Todd W. Eddins

